*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 39**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

MARK CHARLES HAIK,
*Appellant,*

*v.*

KENT L. JONES, as Utah State Engineer,
and SALT LAKE CITY CORPORATION,
*Appellees.*

No. 20160878
Filed August 7, 2018

On Direct Appeal

Third District, Salt Lake
The Honorable Judge Royal I. Hansen
No. 160903224

Attorneys:

Paul R. Haik, Eden Prairie, MN, for appellant

Sean D. Reyes, Att'y Gen., Norman K. Johnson, Julie I. Valdes,
Asst. Att'ys Gen., Salt Lake City, for appellee Kent L. Jones

Shawn E. Draney, Scott H. Martin, Dani N. Cepernich, Salt Lake
City, for appellee Salt Lake City Corporation

JUSTICE PEARCE authored the opinion of the Court in which
JUSTICE HIMONAS and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE authored an opinion concurring in part
and concurring in result in which CHIEF JUSTICE DURRANT joined.

JUSTICE PEARCE, opinion of the Court:

### INTRODUCTION

¶ 1 Mark Haik wants water for his undeveloped canyon lots. As part of an effort to obtain that water, Haik challenged a change application that sought to add acreage to accommodate a private

water system that would serve ten homes in Little Cottonwood Canyon. The change application did not directly impact Haik's property or his water rights. Haik sought judicial review of the State Engineer's approval. The district court concluded Haik lacked standing to mount that challenge. The district court also rebuffed Haik's efforts to amend his petition and dismissed. Haik appeals. We affirm.

## BACKGROUND

¶ 2  As we noted when we last addressed a Haik appeal, "[Haik] has spent the better part of the last twenty years asking courts to order Salt Lake City to supply his undeveloped property in the Albion Basin Subdivision with enough water (at least 400 gallons per day) to allow him to build houses on it." *Haik v. Salt Lake City Corp.*, 2017 UT 14, ¶ 2, 393 P.3d 285. For a somewhat more complete history of Haik's saga, see *id.* ¶¶ 2–6.

¶ 3 This time around, Haik challenged Change Application #57-10013. The application explained its raison d'être:

> This Change Application adds 25.165 acres, located and described in the attached Exhibit A, to the approved place of use. No other changes are sought. Salt Lake City adds this acreage to reflect the anticipated construction of a private stand-alone water system sourced from the Bay City Mine to serve only up to 10 single family homes to be located on said acreage. The right to use of this surplus water is based on the . . . Water Supply Agreement between Salt Lake City and certain Alta area property owners, as amended by [a court order]. Under this Order, each of the up to 10 homes may receive up to 800 [gallons per day] average calculated on a monthly basis—for a maximum total of 8,000 [gallons per day] calculated on a monthly basis.

Haik is not one of these "certain Alta area property owners" the change application references. Indeed, Haik requested that the district court either enjoin the State Engineer's decision or allow him "to similarly construct a private stand-alone system" that could serve his property.

¶ 4 Despite having no direct connection to the change application, Haik challenged it. Haik asserted that Salt Lake City Corporation (the City) failed to show that "its application was filed in 'good faith and not for purposes of speculation or monopoly.'" (Quoting UTAH CODE § 73-3-8(1)(a)(v)). Haik also argued that the

City had violated article XI, section 6 of the Utah Constitution, which provides:

> No municipal corporation, shall directly or indirectly, lease, sell, alien or dispose of any waterworks, water rights, or sources of water supply now, or hereafter to be owned or controlled by it; but all such waterworks, water rights and sources of water supply now owned or hereafter to be acquired by any municipal corporation, shall be preserved, maintained and operated by it for supplying its inhabitants with water at reasonable charges . . . .

Haik contended that by "add[ing] a private system for the purpose of diverting [the] public water supply," the City unconstitutionally alienated water. Haik additionally asserted that the City abused its alleged monopoly power by denying landowners water.

¶ 5 Despite Haik's objections, the State Engineer approved the change application. In response, Haik filed a petition in the district court seeking a trial de novo of the State Engineer's order. Haik's petition rehashed the arguments he made to the State Engineer. The City moved to dismiss, arguing that Haik lacked standing, had failed to exhaust his administrative remedies, and that the petition failed to state a viable claim. The State Engineer argued that Haik lacked standing and that Haik's claims fell outside the scope of a trial de novo.

¶ 6 Haik opposed the motions, but also moved for leave to amend. Haik asked: "If the Court determines there is an insufficiency in the petition based upon the motions for dismissal of either the State Engineer or Salt Lake City Corporation, then Mark Haik requests leave to amend or supplement so as to cure any deficiency." But Haik did not attach a proposed amended petition or describe in any way, shape, or form how he might amend the petition to remedy the deficiencies the City and State Engineer attacked.

¶ 7 The district court granted the motions to dismiss. The district court concluded that it lacked jurisdiction because Haik lacked standing. The court also held that Haik had asserted claims that were not the proper subject of a trial de novo of a change application.[1]

---

[1] The district court also found that Haik had failed to follow appropriate procedures in pursuing a declaration that certain water was "available for appropriation" because Haik had not pressed this claim in front of the State Engineer.

Finally, the district court denied Haik's motion to amend because he had "failed to provide a proposed amended petition with his motion" and because "any proposed amendment would be futile . . . ."

¶ 8  Haik appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 9  Haik argues that the district court erred in granting the motions to dismiss his petition. The grant of a motion to dismiss presents a question of law that we review for correctness. *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 19, 258 P.3d 539.

¶ 10  Haik also argues that the district court erred in denying his motion for leave to amend. The district court denied the motion because Haik failed to attach a proposed amended petition and because it found that any amendment would be futile.

¶ 11  We have reviewed denial of motions for leave to amend under an abuse of discretion standard. *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 56, 48 P.3d 895. And we have drawn no distinction between denials premised on a procedural defect—such as timeliness or failure to attach a proposed amended pleading—and denials based upon the amendment's futility. *See, e.g.*, *McLaughlin v. Schenk*, 2009 UT 64, ¶ 41, 220 P.3d 146 ("[W]e hold the district court did not abuse its discretion because McLaughlin's amendment failed to state new facts or a new theory that had not already been addressed by the court; an amendment would have been futile.").

¶ 12  Our court of appeals, on the other hand, has drawn just such a distinction. For example, in *Powder Run at Deer Valley Owner Ass'n v. Black Diamond Lodge at Deer Valley Ass'n of Unit Owners*, the appeals court noted that while it reviews for "abuse of discretion a ruling on a motion for leave to amend a pleading, we review a futility determination for correctness." 2014 UT App 43, ¶ 6, 320 P.3d 1076.

¶ 13  The State Engineer noted this distinction in its brief and expressed confusion over the appropriate standard. And we think the court of appeals has it right. Futility of an amendment asks for a legal determination of the merits of the proposed amendment. But before overturning our precedent, we must conduct a *stare decisis* analysis. *See Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553. "*Stare decisis* 'is a cornerstone of Anglo–American jurisprudence' because it 'is crucial to the predictability of the law and the fairness of adjudication.' Because *stare decisis* is so important to the predictability and fairness of a common law system, we do not overrule our precedents 'lightly.'" *Id.* ¶ 21 (citations omitted).

¶ 14 "Our decisions have identified two broad factors that distinguish between weighty precedents and less weighty ones: (1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent has become established in the law since it was handed down." *Id.* ¶ 22. It appears that we have simply not analyzed whether we should employ a separate standard of review for denying a motion for leave to amend because of futility. In *McLaughlin*, we reviewed a denial of a motion to amend on grounds of futility and summarily stated that "[w]e review a district court's decision to deny a plaintiff's motion to amend its complaint for abuse of discretion." 2009 UT 64, ¶ 14. And we applied that standard of review without analysis. *See id.* ¶ 41. We have noted that precedent is less weighty when we have "simply presumed . . . without analy[sis]." *State v. Legg*, 2018 UT 12, ¶ 11, 417 P.3d 592.

¶ 15 As for "how firmly the precedent has become established," *Eldridge*, 2015 UT 21, ¶ 22, the court of appeals apparently saw a gap to fill and applied a separate standard. *See Powder Run*, 2014 UT App 43, ¶ 6; *Shah v. Intermountain Healthcare*, 2013 UT App 261, ¶ 6, 314 P.3d 1079 (reviewing a district court's denial of a motion to amend on grounds of futility for correctness). Meanwhile, it appears that *McLaughlin*'s standard of review has yet to be cited in a published case.

¶ 16 Taken together, we can safely conclude that this is a case in which the *Eldridge* factors have been satisfied and that more harm than good will come from adherence to *stare decisis* principles. As such, we disavow the portion of *McLaughlin* where we reviewed the denial of a motion to amend on futility grounds for an abuse of discretion. When the purported futility of the amendment justifies the denial of a motion to amend, we review for correctness.

## ANALYSIS

### I. Haik Lacks Standing Because He Is Not "Aggrieved by an Order of the State Engineer"

¶ 17 Before the district court, Haik argued he had standing to challenge the State Engineer's order under Utah Code section 73-3-14. That provision provides that "[a] person aggrieved by an order of the state engineer may obtain judicial review in accordance with Title 63G, Chapter 4, Administrative Procedures Act, and this section." UTAH CODE § 73-3-14(1)(a). In this context, "'aggrieved' is consistent with our traditional standing requirement that a plaintiff show particularized injury." *Wash. Cty. Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 14, 82 P.3d 1125.

¶ 18 "We have recognized that 'the first and most widely employed standard' for establishing standing 'requires a plaintiff to show some distinct and palpable injury that gives rise to a personal stake in the outcome of the dispute.' This requirement that a plaintiff demonstrate such 'particularized' injury is part of the 'traditional' test for standing." *Id.* ¶ 20 (citations omitted). "The traditional standing requirement is generally justified on grounds that in the absence of a requirement that a plaintiff have a 'personal stake in the outcome' or a 'particularized injury,' the courts might permit themselves to be drawn into disputes that are not fit for judicial resolution or amount to 'generalized grievances that are more appropriately directed to the legislative and executive branches of the state government.'" *Soc'y of Prof'l Journalists, Utah Chapter v. Bullock*, 743 P.2d 1166, 1170 (Utah 1987) (citation omitted).

¶ 19 Haik contends that "[he] is a landowner in the valley" and that this "suffices for recognizing him as an aggrieved person." Haik cites *Utah Alunite Corp. v. Jones*, 2016 UT App 11, 366 P.3d 901, for this proposition. In that case, the court concluded that appellants were aggrieved because they were granted a water right "subject to the [Water] District's senior right." *Id.* ¶¶ 4, 9 (alteration in original). Appellants there challenged that senior right. *Id.* ¶ 4. The State Engineer's decision that appellants' rights were junior caused appellants to suffer an "'actual or potential injury' resulting from the State Engineer's decision." *Id.* ¶ 7 (citation omitted). Thus, they were aggrieved.

¶ 20 There is no similar contention here. Unlike the appellants in *Utah Alunite Corp.,* the change application here does not impact Haik in any direct or particularized way. Haik merely claims that he, like many others, "is a landowner in the valley from which the water is to be appropriated . . . ." In other words, Haik argues that because he receives (or wants to receive) water from the City, he has an interest in how the City manages that water and standing to challenge the City's decision. Haik's injury could hardly be "particularized" if any person who receives water from the City could assert it.[2]

---

[2] Haik argues that Salt Lake City "concedes [that] landowners with inevitable water needs have an interest," citing footnote 4 of Salt Lake City's brief. What Salt Lake City wrote, however, is that the court of appeals in *Utah Alunite Corp.* "reference[d] the State Engineer's position that '"as a landowner . . . with inevitable water needs, [the appellant] had an interest in [the] water . . . ."'" (Third

(continued . . .)

¶ 21 Haik also appears to argue that approval of this change application appropriated water that could have been his. Haik claims that "[i]f wrongful municipal appropriation is followed by unconstitutional alienation back to selected or favored private parties, then the public trust is injured and wrongful displacement of waters that would otherwise be available to serve private residences occurs, directly harming Haik." But Haik makes no showing that if the change application were denied, any additional water would flow his way. Since Haik has made no showing that if this water were not used for these residences it would be available for his land, he cannot meet our traditional standing test and cannot be considered an aggrieved party under the statute.[3]

¶ 22 Next, Haik contends that "wrongful displacement [of water] enhances injury to Haik because his apparent recourse to water is only through purchase of private water. To the extent[] that private water is unconstitutionally, illegally displaced; that injury reduces recourse for Haik." (Emphases omitted). Again, the availability of water on the open market, which impacts all persons receiving water from the City, is more of a "generalized grievance[]" than the distinct injury our standing caselaw requires. *Bullock*, 743 P.2d at 1170 (citation omitted).[4]

---

alteration a correction) (quoting *Utah Alunite Corp.*, 2016 UT App 11, ¶ 10 n.7). The "inevitable water needs" in *Utah Alunite Corp.* were coupled with a distinct interest in the State Engineer's decision. 2016 UT App 11, ¶¶ 4, 7, 10 n.7. In other words, although the *Utah Alunite Corp.* appellants did not ultimately have standing because they failed to participate in the administrative proceeding, they could show a particularized injury; Haik cannot. *Id.* ¶¶ 7–10. And Salt Lake City never conceded otherwise.

[3] Haik similarly argues that any owner of a private water right should have standing to raise constitutional claims. This argument fails for the same reason; we do not abandon our standing requirements simply because the plaintiff wishes to assert a constitutional claim. We have recognized public interest standing in certain circumstances, but for the reasons discussed herein, Haik does not clear that bar either.

[4] Haik also litters his brief with a number of conclusory and inadequately briefed arguments that fail to persuade. For example, Haik cites an antitrust case from the United States Court of Appeals for the Tenth Circuit to assert that his allegations of Salt Lake City's

(continued . . .)

## II. Haik Lacks Public Interest Standing

¶ 23 Haik argues that even if he lacks traditional standing, he has public interest standing.[5] "Utah law . . . allows parties to gain standing if they can show that they are an appropriate party raising issues of significant public importance." *Gregory v. Shurtleff*, 2013 UT 18, ¶ 18, 299 P.3d 1098 (omission in original) (citation omitted). "[T]his test breaks down to two elements." *Id.* ¶ 28 (citation omitted). First, the issue must be of "significant public importance." *Id.* ¶¶ 27–28 (citation omitted). Second, the party invoking public interest standing "must also be 'an appropriate party.'" *Id.* ¶ 28 (citation omitted).

¶ 24 Haik claims he has public interest standing to assert both constitutional and nonconstitutional claims. Haik's nonconstitutional claim posits that the change application was filed in bad faith and for the purpose "of speculation or monopoly . . . ." UTAH CODE

---

monopolistic activities grant standing "to situations inextricably intertwined and integral to appropriations within Little Cottonwood Canyon." (Citing *Reazin v. Blue Cross & Blue Shield of Kan.*, 899 F.2d 951 (10th Cir. 1990)). Haik does not develop this analysis in a way that would permit us to address it in a meaningful way.

[5] Any invocation of the public standing doctrine should come with a warning label that two members of this court have expressed serious doubt about the intellectual underpinnings of the doctrine and have invited further discussion of its continued viability. *See Gregory v. Shurtleff*, 2013 UT 18, ¶ 64, 299 P.3d 1098 (Lee, J., concurring in part and dissenting in part) ("In overriding these constraints, the majority robs the constitutional limits on our power of meaningful content. It does so to uphold standing for the Article VI claimants in this case on public interest grounds, thereby subjecting the standing inquiry to the arbitrary discretion of the court, under a standardless 'test' that is little more than a post-hoc justification for a preferred result."). No party asks us to revisit our jurisprudence and none has attempted to lift the burden necessary to convince us to depart from *stare decisis* principles. *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 21, 345 P.3d 553 ("*Stare decisis* 'is a cornerstone of Anglo-American jurisprudence' because it 'is crucial to the predictability of the law and the fairness of adjudication.' Because *stare decisis* is so important to the predictability and fairness of a common law system, we do not overrule our precedents 'lightly.'" (citations omitted)).

§ 73-3-8(1)(a)(v). Haik fails, however, to convince that the issue he raises constitutes an issue of "significant public importance." *Gregory*, 2013 UT 18, ¶ 27 (citation omitted).

> To show that an issue is of significant importance, [a party] must not only show that the "issues are of a sufficient weight but also that they are not more appropriately addressed by another branch of government pursuant to the political process." And, "[t]he more generalized the issues, the more likely they ought to be resolved in the legislative or executive branches."

*Cedar Mountain Envtl., Inc. v. Tooele Cty. ex rel. Tooele Cty. Comm'n*, 2009 UT 48, ¶ 18, 214 P.3d 95 (second alteration in original) (citations omitted), *declined to follow on other grounds*, *Salt Lake Cty. v. Holliday Water Co.*, 2010 UT 45, 234 P.3d 1105.

¶ 25 Haik notes that "[t]here is a profound recognition of the importance of water in Utah . . . ." And he implicitly argues that because water is important, legal issues surrounding water should be considered issues of significant public interest. Although we have never said that all water issues are significant, in *Washington County Water Conservancy District v. Morgan*, we left open "the possibility that some issues concerning water rights might present questions of great public importance." 2003 UT 58, ¶ 27, 82 P.3d 1125. We opined that such a case would arise "where a large number of people would be affected by the outcome." *Id.* But this is not the type of case that we contemplated in *Washington County*. The approval of this change application, which added acreage "to serve only up to 10 single family homes," does not present a matter of great public importance, as we described that term in *Washington County*.

¶ 26 That leaves the possibility that Haik's constitutional claim might be of significant public importance. Haik argues that the City has violated Utah Constitution article XI, section 6, alleging that the City unconstitutionally alienated water by diverting it to private residences and that the City unconstitutionally refused water to others. We have recognized that "[n]ot every constitutional provision, to be sure, is of such importance that a claim of its violation will necessarily rise to the level of 'significant public importance' required for public-interest standing . . . ." *Gregory*, 2013 UT 18, ¶ 27 (citation omitted). But we have sometimes found that public interest standing was appropriate where a plaintiff asserted constitutional claims.

¶ 27 For example, in *Gregory*, the appellants challenged the constitutionality of a bill partly under "Article VI, Section 22 of the Utah Constitution, which provides that [subject to exceptions] 'no bill shall be passed containing more than one subject, which shall be clearly expressed in its title.'" *Id.* ¶ 4 (emphasis omitted) (quoting Utah Const. art. VI, § 22). We reasoned that, because "[t]he restrictions placed on legislative activity by Article VI, Section 22 of the Utah Constitution are part of the fundamental structure of legislative power articulated in our constitution[,] [t]hey are . . . of sufficient importance and general interest that claims of their violation may be brought even by plaintiffs who lack standing under the traditional criteria." *Id.* ¶ 27; *see also City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, ¶¶ 3–6, 19, 233 P.3d 461 (holding that plaintiffs had public interest standing to challenge an alleged breach of a redevelopment agreement where Tooele City sold property and allegedly failed to share the proceeds of that sale with the county or redevelop the property for the benefit of the community); *Utah Chapter of Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶¶ 3, 44, 148 P.3d 960 (holding that plaintiffs had public interest standing to challenge the permitting of a plant because it would "emit hazardous chemicals" and was close to plaintiffs' homes and to Capitol Reef National Park).

¶ 28 We can assume without deciding that Haik's constitutional claims are of significant public importance because they fail for another reason: they are not properly before us. Utah Code section 63G-4-402(1)(a) provides that "[t]he district courts have jurisdiction to review by trial de novo all final agency actions resulting from informal adjudicative proceedings . . . ." "'[T]he district court's judgment in reviewing the [State Engineer's] decision is limited to the issues determinable by the [State Engineer]' and 'the court may not determine issues not within the power of the [State Engineer] to determine.'" *Jensen v. Jones*, 2011 UT 67, ¶ 16, 270 P.3d 425 (citation omitted).

¶ 29 We have noted "that 'the State Engineer does not have the authority to adjudicate all the issues that may arise in the context of a change application.'" *Id.* ¶ 11 (citation omitted). "With respect to change applications, the jurisdiction of the State Engineer's office is thus circumscribed by the criteria upon which the statute permits it to base its decisions. Those criteria are largely set forth in Utah Code section 73-3-8(1)." *Id.* (citation omitted). That statute provides that:

> (1)(a) It shall be the duty of the state engineer to approve an application if there is reason to believe that:

(i) for an application to appropriate, there is unappropriated water in the proposed source;

(ii) the proposed use will not impair existing rights or interfere with the more beneficial use of the water;

(iii) the proposed plan:

> (A) is physically and economically feasible, unless the application is filed by the United States Bureau of Reclamation; and

> (B) would not prove detrimental to the public welfare;

(iv) the applicant has the financial ability to complete the proposed works;

(v) the application was filed in good faith and not for purposes of speculation or monopoly; and

(vi) if applicable, the application complies with a groundwater management plan adopted under Section 73-5-15.

UTAH CODE § 73-3-8(1)(a).

¶ 30 "The context of the entire statute makes it clear that the State Engineer does not have the authority to adjudicate all the issues that may arise in the context of a change application. . . . [T]he statutory authority of the State Engineer does not include jurisdiction over cases more properly presented in other forums . . . ." *Badger v. Brooklyn Canal Co.*, 922 P.2d 745, 750–51 (Utah 1996). In interpreting these restrictions on the State Engineer's authority, we have stated that "[t]he state engineer lacks authority to adjudicate water rights . . . ." *Jensen*, 2011 UT 67, ¶ 18. We have similarly held that the State Engineer cannot "consider non-adjudicated forfeiture," *id.*, or "shareholder rights" to water, *Badger*, 922 P.2d at 749, 751.

¶ 31 The constitutional claims Haik has brought, though possibly relevant to a change application, should be adjudicated in district court and not before the State Engineer. *See id.* at 750 ("The context of the entire statute makes it clear that the State Engineer does not have the authority to adjudicate all the issues that may arise in the context of a change application."). It is not for the State Engineer to "determine whether the approval [of this change application] is a lawful or unlawful alienation . . . ." Even Haik seems

to recognize this, explaining during the hearing in front of the State Engineer:

> To clarify, the issue and the only issue that lies at the heart of all of this is what is the meaning of Article 11, Section 6 of the Utah Constitution? Because that's the constitutional provision that drives all of Salt Lake City's water business, everything. Everything it does under the statute, everything it does under your appropriations, including this application. And that is the issue the Tenth Circuit has sent back and said the Utah Constitution, what that means and how that means, that's for the Utah Supreme Court to decide. We're not asking you to decide that in any way. We're asking you to apply your best skill and judgment to the factual circumstance, apply the statutes that are in front of you and make a decision.[6]

¶ 32 Haik did not ask the State Engineer to interpret the constitution. But he did try and bootstrap that constitutional argument to his challenge in front of the State Engineer. Because the State Engineer could not properly decide the issue, it was not an issue properly before the district court in a trial de novo. *See* UTAH CODE § 63G-4-402(1)(a) ("The district courts have jurisdiction to review by trial de novo all final agency actions resulting from informal adjudicative proceedings . . . ."). And because it was not properly before the district court, it is not properly before us.

¶ 33 Although we assume without deciding that Haik's constitutional claim could be considered an issue of significant public importance, he cannot press that constitutional claim as part of a challenge to a change application.[7]

---

[6] It is unclear to us what Haik was referring to in stating that this is an "issue the Tenth Circuit has sent back" for us to decide. To the extent that the Tenth Circuit opined that this is a matter of state law, bringing these constitutional concerns in front of the State Engineer is not the way to resolve them.

[7] Salt Lake City also argues, based partly upon our decision in *Washington County*, that public interest standing is not available to a party seeking review of the State Engineer's decision. The concluding paragraph of that decision could be read to suggest that we had decided that public interest standing had no truck in a challenge of the State Engineer's decision. *Wash. Cty. Water*

(continued . . .)

### III. The District Court Properly Denied
### Haik's Motion for Leave to Amend

¶ 34  The district court denied Haik's motion for leave to amend for two reasons: Haik did not attach a proposed amended petition, and any amendment would be futile.

¶ 35  In *Holmes Development, LLC v. Cook*, we stated that "[a motion] for leave to amend must be accompanied by a memorandum of points and authorities in support and by a proposed amended complaint." 2002 UT 38, ¶ 57, 48 P.3d 895 (citations omitted). A proposed amendment allows "the court [to] ascertain what changes are sought and . . . determine whether the motion should be granted and whether justice so requires the amendment of a pleading." *Id.* ¶ 58. Haik failed to attach an amended petition. Moreover, Haik gave the district court no reason to believe that he could craft an amended pleading that would resolve the deficiencies the motions to dismiss exposed. The district court did not abuse its discretion in denying a procedurally deficient motion. The district court also properly concluded that such an amendment would be futile because Haik provided no basis under which he would have alleged standing.

### CONCLUSION

¶ 36  Haik is not a person aggrieved by the State Engineer's decision. His constitutional claims were not properly before the State Engineer and Haik does not qualify for public interest standing. After the motions to dismiss raised these problems, Haik sought leave to amend but did not attach a proposed amended pleading. The district court did not err in finding that Haik lacked standing. Nor did it abuse its discretion in denying the motion to amend. We affirm.

---

*Conservancy Dist.*, 2003 UT 58, ¶ 28. But there is no analysis of this question in the opinion and we believe that question is still open.

LEE, A.C.J., concurring in part and concurring in the result

ASSOCIATE CHIEF JUSTICE LEE, concurring in part and concurring in the judgment:

¶37   I agree with and concur in the court's judgment affirming the dismissal of Mark Haik's statutory and constitutional claims. I also concur in much of the majority opinion. I write separately, however, because I find unnecessary the court's discussion of "public interest" standing. *See supra* ¶¶ 23–27. This doctrine rests on shaky constitutional footing. *See Gregory v. Shurtleff*, 2013 UT 18, ¶¶ 87–91, 299 P.3d 1098 (Lee, J., concurring in part and dissenting in part, joined by Durrant, C.J.) (concluding that the public interest standing doctrine is incompatible with the judicial power clause of article VIII of the Utah Constitution). And I would not reinforce it here as the application of this doctrine is not properly presented for our decision.

¶38   I would hold that Haik lacks standing to assert his statutory and constitutional claims on the ground that he is not "[a] person aggrieved by an order of the state engineer." UTAH CODE § 73-3-14(1)(a). And I would affirm the dismissal of Haik's constitutional claim on the alternative ground (endorsed by the majority) that he "cannot press [a] constitutional claim as part of a challenge to a change application" under the governing statute. *Supra* ¶¶ 28–33. These grounds for decision obviate the need for us to consider or apply the doctrine of public interest standing. And I would stop short of so doing because the doctrine is problematic and not necessary to our decision.

I

¶39   To have standing to assert a claim a plaintiff must clear two hurdles. The first hurdle emanates from the law that establishes the plaintiff's right of action—the common law, a statute, or the constitution. If the plaintiff is asserting a statutory claim, for example, he has standing only if he is within the class of parties that the legislature authorized to file suit.[8] This is sometimes called "statutory standing."[9]

---

[8] *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386–87 (2014) (explaining that the threshold standing question on a statutory claim, antecedent to the constitutional standing question, is "a matter of statutory interpretation"—as to "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim" (citations omitted)); *see also In re Questar Gas Co.*, 2007 UT 79, ¶ 61, 175 P.3d 545 ("A person who is 'aggrieved' by

(continued . . .)

LEE, A.C.J., concurring in part and concurring in the result

¶40 The second hurdle is constitutional. Even if the plaintiff has a statutory right to sue he may lack standing if he does not meet the constitutional requirements for standing.[10] Under our cases the "traditional" standing test requires proof that the plaintiff suffered a "distinct and palpable injury that gives rise to a personal stake in the outcome of the dispute." *Wash. Cty. Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶¶ 14, 20, 82 P.3d 1125. A majority of the court has also endorsed an alternative test under the constitution—for "public interest standing." *Gregory v. Shurtleff*, 2013 UT 18, ¶¶ 16, 18, 299 P.3d 1098 (citations omitted).

¶41 If a plaintiff is asserting a statutory claim the constitutional standing question arises if and only if the plaintiff has statutory standing. If the plaintiff is not within the class of parties that the legislature has authorized to file suit, it does not matter whether that plaintiff could identify some sort of "distinct and palpable injury" or a basis for "public interest" standing. *See, e.g., In re Questar Gas Co.*,

---

agency action must establish 'that the injury he complains of . . . falls within the "zone of interests" sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.'" (omission in original) (citations omitted)).

[9] *See Lexmark*, 134 S. Ct. at 1387 n.4 (noting that this inquiry is sometimes referred to as "statutory standing"); *Wash. Cty. Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶¶ 8–10, 82 P.3d 1125 (concluding that a water conservancy district lacked "statutory standing" to file suit under Utah Code section 73-1-4; treating this inquiry as a matter of statutory interpretation and concluding that "we have never interpreted the forfeiture statute to confer on all members of the general public statutory standing to file forfeiture actions"); *id.* at ¶¶ 11–14 (explaining that a party's standing to sue under Utah Code section 73-3-7(1) "is a question of statutory interpretation"; concluding that there is "nothing in the statutory framework to suggest a legislative attempt to grant a right of judicial review to those who can show no . . . grievance or injury").

[10] *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. [Constitutional] standing requires a concrete injury even in the context of a statutory violation.").

LEE, A.C.J., concurring in part and concurring in the result

2007 UT 79, ¶ 57, 175 P.3d 545 (concluding that an "aggrieved" party did not have standing because it "d[id] not fall within the classes of persons to whom standing is granted").[11] Constitutional standing is a backstop, in other words—a set of secondary requirements that are relevant only if the plaintiff can first show that the legislature has authorized him to file suit (otherwise constitutional standing would be a backdoor basis for overriding legislative intent; and that is not the point of constitutional standing.[12]).

II

¶42 This means that the threshold question for our decision is whether Haik has a statutory right to challenge the state engineer's order. He does not. By statute only "[a] person aggrieved" by an order of the state engineer is authorized by the legislature to sue. UTAH CODE § 73-3-14(1)(a). And Haik is not a "person aggrieved." *See supra* ¶¶ 20, 36.

¶43 This conclusion follows from the standard set forth in our opinion in *Washington County Water Conservancy District v. Morgan*,

---

[11] One of our decisions arguably suggests that a plaintiff could overcome a lack of statutory standing by satisfying the elements of "alternative" constitutional standing. *See Cedar Mountain Envtl., Inc. v. Tooele Cty. ex rel. Tooele Cty. Comm'n*, 2009 UT 48, ¶¶ 8, 14, 214 P.3d 95 (evaluating whether a party has "alternative standing" after concluding that it had standing under a statute). But the "alternative standing" analysis in that case was unnecessary because the plaintiff had already established standing under a statute incorporating the "traditional test" (requiring proof of a particularized injury). *Id.* ¶ 14. So the alternative standing discussion in *Cedar Mountain Environmental* is unnecessary dicta. And that case should not be construed to override the central logic set forth in the other cases cited herein.

[12] Its point, instead, is simply to assure that our courts are limited to exercising the sort of power conferred on us under article VIII of the Utah Constitution. *Brown v. Div. of Water Rights of Nat. Res.*, 2010 UT 14, ¶¶ 12–13, 228 P.3d 747 (recognizing that our constitution "mandates certain standing requirements, which emanate from the principle of separation of powers" and limit "a court's basic authority over [a] dispute" (citation omitted)); *Gregory*, 2013 UT 18, ¶ 66 (Standing "is an essential element of the constitutional provisions defining and limiting the judicial power.") (Lee, J., concurring in part and dissenting in part).

LEE, A.C.J., concurring in part and concurring in the result

2003 UT 58, 82 P.3d 1125. In that case we held that the legislature has confined the right to challenge an order of the state engineer to those who have suffered a particularized injury. *Id.* ¶ 14 (finding "nothing in the statutory framework to suggest a legislative attempt to grant a right of judicial review to those who can show no [particularized] grievance or injury"); *id.* ¶ 16 ("[e]quating the statutory term 'aggrieved' with the traditional standing requirement of particularized injury"). We held that a mere "interested" party lacking a particularized injury does not qualify as a "person aggrieved by an order of the state engineer" under Utah Code section 73-3-14(1)(a). *Id.* ¶ 14. And we tied that conclusion to the operative language of the statute. *Id.* ¶¶ 11, 14.

¶44 Salt Lake City has asked us to reject Haik's public interest standing argument on this basis. It cites the above analysis in the *Washington County* case. And it asserts that "Haik offers no authority for his apparent position that the common-law doctrine of public interest standing can displace the statutory requirement in UAPA that a person be an 'aggrieved party' in order to seek judicial review."

¶45 That seems exactly right. I would endorse that view. I would conclude only that Haik lacks statutory standing because he does not fall within the class of plaintiffs entitled to file suit in a case like this one. And I would not proceed to analyze the question whether Haik could qualify for public interest standing.

―――――――