*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 16**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SUMMIT COUNTY,
*Appellee,*

*v.*

TOWN OF HIDEOUT,
*Appellant.*

No. 20220573
Heard March 6, 2023
Filed June 13, 2024

On Direct Appeal

Fourth Judicial District, Wasatch County
The Honorable Jennifer A. Mabey
No. 200500107

Attorneys:

Margaret H. Olson, David L. Thomas, Ryan P.C. Stack, Coalville,
for appellee

Troy L. Booher, Caroline A. Olsen, Taylor P. Webb,
Robert E. Mansfield, Megan E. Garrett, Salt Lake City,
Polly Samuels McLean, Park City, for appellant

JUSTICE POHLMAN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE PETERSEN, JUSTICE HAGEN, and
JUDGE OLIVER joined.

Having recused himself, ASSOCIATE CHIEF JUSTICE PEARCE does not
participate herein; COURT OF APPEALS JUDGE AMY J. OLIVER sat.

JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1    For just over one hundred days in 2020, Utah law authorized a municipality to annex an outlying, unincorporated area without an annexation petition and without county consent. During this period, the Town of Hideout—aware that the legal window was closing—undertook to annex an area located in nearby Summit County.

¶2    After Hideout received a certificate of annexation from the Lieutenant Governor, Summit County challenged the annexation and the attendant municipal ordinance (annexation ordinance) in the district court. Both parties moved for summary judgment, Hideout disputing Summit County's standing, and Summit County seeking judgment on the merits of one of its five claims. The district court ruled against Hideout on both motions, concluding that Summit County had standing to challenge the annexation and declaring the annexation ordinance invalid from its inception.

¶3    We reverse the district court's decisions. The relevant statutory scheme—the annexation code—does not provide Summit County with a legally protectible interest that would allow it to obtain the relief it seeks. Similarly, the statutory provisions outside the annexation code that Summit County relies on do not provide Summit County with a legally protectible interest in the controversy. Finally, the doctrine of public interest standing, on which the district court alternatively relied, is inapplicable here.

¶4    Because we conclude that Summit County lacks standing to pursue its claims, we also reverse the district court's award of summary judgment in Summit County's favor without addressing the merits of Summit County's claims, and we remand the case to the district court for dismissal.

## BACKGROUND

¶5    We begin by describing the statutory scheme the legislature has established to govern land annexation, including relatively recent changes to that scheme. We then summarize Hideout's annexation and Summit County's challenge.

*The Legislature's 2020 Changes to the Utah Annexation Code*

¶6    The Utah Legislature has the authority to determine municipal boundaries. *Sandy City v. City of South Jordan*, 652 P.2d 1316, 1318 (Utah 1982); *see also Kearns-Tribune Corp. v. Salt Lake Cnty. Comm'n*, 2001 UT 55, ¶ 21, 28 P.3d 686. This includes regulating

land annexation, *see Kearns-Tribune Corp.*, 2001 UT 55, ¶ 21, which is the extension of town or city boundaries into unincorporated areas. The legislature has long delegated its annexation power to local governments. *See generally* UTAH CODE §§ 10-2-401 to -429 (the annexation code).

¶7     Prior to the 2020 general legislative session, the annexation code generally permitted annexation only when the area to be annexed was contiguous to the annexing municipality. *See id.* § 10-2-402(1)(a) (May 1, 2020). An annexing municipality also typically had to initiate a petition to commence the annexation process. *See id.* § 10-2-403(1) (May 1, 2020); *see also id.* § 10-2-402(2) (May 1, 2020). And if a municipality wanted to annex property located in a county different from its own, the other county had to consent. *Id.* § 10-2-402(6)(a) (May 1, 2020).

¶8     During the 2020 general legislative session, the legislature enacted H.B. 359S1, which created an exception to these requirements.[1] Under the bill, later codified as Utah Code subsection 10-2-418(3), a municipality was permitted to annex a non-contiguous, unincorporated area "without an annexation petition or the consent of the county in which the area proposed for annexation is located" if certain conditions were met. *See id.* § 10-2-418(3) (July 1, 2020). The proposed annexation area had to meet specific criteria and be located "within two miles of the proposed annexing municipality's boundary." *Id.* § 10-2-418(3)(a)–(b) (July 1, 2020). Further, "each owner of private real property within the area proposed for annexation" had to consent "in writing to the proposed annexation." *Id.* § 10-2-418(3)(c) (July 1, 2020).

¶9     Besides meeting these criteria, a municipality carrying out an annexation under subsection 10-2-418(3) had to satisfy other requirements. The annexing municipality had to adopt a resolution indicating its "intent to annex the area" and describing "the area proposed to be annexed." *Id.* § 10-2-418(6)(a) (July 1, 2020). The annexing municipality was further required to publish notice of and hold a public hearing on the proposed annexation. *Id.* § 10-2-418(6)(b), (7) (July 1, 2020).

¶10   So long as the pertinent statutory requirements were met, a municipality conducting an annexation under the process established by H.B. 359S1 was permitted to "adopt an ordinance

---

[1] *See* Municipal Annexation Revisions, H.B. 359, 2020 Leg., Gen. Sess. (Utah 2020) (available at https://le.utah.gov/~2020/bills/static/HB0359.html).

approving the annexation of the area proposed for annexation." *Id.* § 10-2-418(9)(b)(i)(B) (July 1, 2020). And it could do so "without allowing or considering protests." *Id.* § 10-2-418(9)(b)(i) (July 1, 2020). "[W]ithin 60 days after enacting" an annexation ordinance, the annexing municipality had to file "a notice of an impending boundary action," as well as "a copy of an approved final local entity plat," with the lieutenant governor. *Id.* § 10-2-425(1)(a) (July 1, 2020).

¶11 The lieutenant governor must review notices of impending boundary action "[w]ithin 10 days" of receiving them. *Id.* § 67-1a-6.5(2). The lieutenant governor determines whether a notice meets the statutory requirements and, if she determines it does, certifies the annexation. *Id.* An annexation carried out under H.B. 359S1 was deemed "completed" and "conclusively presumed to be valid[]" once the lieutenant governor certified it. *Id.* §§ 10-2-425(4)(b), 10-2-418(9)(b)(ii) (July 1, 2020).

¶12 The process permitting a municipality to annex an area without a petition or county consent—the process that the legislature enacted through H.B. 359S1—did not last long. About two months after the bill became law, the legislature passed H.B. 6007, which removed the exception that H.B. 359S1 added.[2] As with other legislation, H.B. 6007 was set to become law sixty days after close of the legislative session.[3] *See* UTAH CONST. art. VI, § 25.

*The Annexation*

¶13 In July 2020, while H.B. 359S1 was still in force, Hideout initiated the process to annex an area of land in Summit County. After one stalled attempt, Hideout began again, omitting some of the property from its first go-around.[4]

---

[2] *See* Municipal Annexation Revisions, H.B. 6007, 2020 Leg., 6th Spec. Sess. (Utah 2020) (available at https://le.utah.gov/~2020S6/bills/static/HB6007.html).

[3] The parties disagree about the date on which H.B. 6007 took effect. The district court stated that the bill became effective on October 20, 2020. Because the bill's effective date is not material to the outcome of this case, we need not resolve this disagreement, and we accept the district court's statement for purposes of this appeal.

[4] Hideout's previous annexation attempt is not at issue in this appeal.

¶14  For its renewed attempt, Hideout secured written consent from the owners of about 350 acres of unincorporated property in Summit County. Hideout held a town council meeting soon after and adopted a resolution conveying its intent to annex the area. At the same meeting, Hideout empowered its mayor to enter into a pre-annexation agreement, which provided that an agreement between Hideout and the private property owners in the annexation area—the Annexation Master Development Agreement (AMDA)—would be executed as part of the annexation.

¶15  Hideout published notice that a hearing on the proposed annexation would be held on October 12, 2020. It held the hearing on the scheduled date and then, on October 16, adopted the annexation ordinance. The annexation ordinance approved the annexation, authorized Hideout's mayor to execute the AMDA, and amended Hideout's zoning map to include the annexed area.

¶16  On October 19, Hideout delivered a notice of impending boundary action to the Lieutenant Governor. Hideout informed the Lieutenant Governor that it had approved the annexation under Utah Code subsection 10-2-418(3). Hideout also attested that the annexation ordinance was "duly adopted" and that "all of the requirements for the annexation . . . ha[d] been met and comply with Utah law." Attached to the notice were copies of the annexation ordinance, final local entity plats, and the AMDA.

¶17  On October 20, H.B. 6007 took effect. *See supra* ¶ 12 n.3. That same day, Summit County wrote to the Lieutenant Governor's office, requesting that he not certify the annexation. Summit County alleged that the annexation ordinance was not in effect, that Hideout's annexation process violated the Utah Open and Public Meetings Act (OPMA), that Hideout's agreement to zone and develop the annexation area was invalid and unlawful, and that the annexation resulted from illegal bribery.

¶18  On October 26, Hideout posted notice of the annexation ordinance in three places around the town.

¶19  The Lieutenant Governor certified the annexation on October 28. The written certificate stated that Hideout had "filed . . . a notice of annexation . . . complying with Section 10-2-418, Utah Code Annotated."

*Summit County's Challenge*

¶20 Summit County promptly filed suit, challenging the annexation, as well as the annexation ordinance and the AMDA, on

5

five grounds. Summit County claimed that during the annexation process, Hideout

> (1) failed to hold public hearings as required by the Municipal Land Use, Development, and Management Act (LUDMA),
>
> (2) did not comply with the enactment procedures required for a land use regulation under LUDMA,
>
> (3) engaged in unlawful contract zoning,
>
> (4) violated the notice requirements of OPMA and the annexation code, and
>
> (5) neglected to timely publish the annexation ordinance.

¶21 Summit County then moved for summary judgment on its fifth claim—that Hideout failed to timely publish the annexation ordinance—and urged the court to declare invalid Hideout's "final actions taken . . . in annexing lands within Summit County."[5]

¶22 Hideout opposed Summit County's summary judgment motion and brought one of its own. Among other things, it asked the court to dismiss Summit County's complaint for lack of standing because Summit County could not establish a legally protectible interest conferred by statute.

¶23 Summit County responded that "as the land use authority" over the annexed area, it has statutory standing under the County Land Use, Development, and Management Act (CLUDMA); LUDMA; and OPMA. Summit County also claimed standing under Utah caselaw because "there is a justiciable controversy" and Summit County holds legally protectible interests "that are adverse to Hideout." And finally, Summit County alternatively claimed standing under the doctrine of public interest standing.

¶24 The district court denied Hideout's motion for summary judgment and granted Summit County's. On Hideout's challenge to Summit County's standing as to "all causes of action," the court agreed with Summit County that it had standing under LUDMA, OPMA, and the doctrine of public interest standing. As for Summit

---

[5] Summit County later moved for summary judgment on its second, third, and fourth claims. The district court ruled on Summit County's summary judgment motion on the fifth claim only, concluding that its ruling was dispositive of all five claims.

County's argument that Hideout's publication of the annexation ordinance was untimely, the court agreed. It reasoned that Hideout's authority to complete the annexation had expired before the annexation was completed, thus invalidating the ordinance.

¶25　Hideout moved for reconsideration, reiterating that it had timely complied with all relevant annexation requirements and asking the court to revisit its standing decision. The district court upheld its original rulings. It again accepted Summit County's assertion that Hideout had not timely "complete[d] all necessary steps for the annexation ordinance to be enacted." And it accepted Summit County's argument that additional statutes, including the Utah Declaratory Judgment Act and CLUDMA, provided standing.

¶26　Upon entry of final judgment, Hideout appealed.

## ISSUE AND STANDARD OF REVIEW

¶27　Hideout challenges the district court's grant and denial of summary judgment. We review a district court's "ultimate grant or denial of summary judgment for correctness." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (cleaned up).

¶28　In this opinion we reach only the district court's decision on the threshold question of Summit County's standing. We review the court's legal determinations relevant to that question for correctness. *Jones v. Barlow*, 2007 UT 20, ¶ 10, 154 P.3d 808; *see also Kearns-Tribune Corp. v. Wilkinson*, 946 P.2d 372, 373 (Utah 1997) ("[T]he question of whether a given individual or association has standing to request a particular relief is primarily a question of law . . . .").

## ANALYSIS

¶29　The district court determined that Summit County has standing under the Declaratory Judgment Act, as well as various sections of CLUDMA, LUDMA, and OPMA. It also concluded that Summit County meets the test for public interest standing.

¶30　We disagree. All five of Summit County's claims are asserted under the Declaratory Judgment Act, and Summit County lacks an essential component of standing under our Declaratory Judgment Act caselaw—a legally protectible interest in the controversy. The interests that Summit County asserts in this case do not amount to legally protectible interests in the annexation, the annexation ordinance, or the AMDA. Further, under our caselaw, the public interest standing doctrine cannot compensate for Summit County's lack of a legally protectible interest because the

legislature excluded outside counties from the statutory annexation process.

## I. BECAUSE SUMMIT COUNTY HAS NO LEGALLY PROTECTIBLE INTEREST IN THE CONTROVERSY, IT LACKS STANDING UNDER THE DECLARATORY JUDGMENT ACT

¶31 The Declaratory Judgment Act aims to "settle and . . . afford relief from uncertainty and insecurity." UTAH CODE § 78B-6-412. To that end, it recognizes the power of district courts "to determine any question of construction or validity" of a statute or municipal ordinance when the statute or ordinance affects a person's "rights, status, or other legal relations." *Id.* § 78B-6-408; *see also id.* § 78B-6-401(1) ("Each district court has the power to issue declaratory judgments determining rights, status, and other legal relations within its respective jurisdiction."). And it authorizes district courts "to declare that person's rights, status, or legal relations under the statute" or ordinance. *Miller v. Weaver*, 2003 UT 12, ¶ 15, 66 P.3d 592.

¶32 Despite its broad terms, the Declaratory Judgment Act does not open courthouse doors that would be closed without it. "The statutory creation of relief in the form of a declaratory judgment does not create a cause of action or grant jurisdiction to the court where it would not otherwise exist." *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983).

¶33 Simply put, parties may bring actions under the Declaratory Judgment Act only if they "can show that the justiciable and jurisdictional elements requisite in ordinary actions"—including standing—"are present." *Miller*, 2003 UT 12, ¶ 16 (cleaned up). We have previously declared that four requirements "must be satisfied" for this standard to be met: "(1) there must be a justiciable controversy; (2) the interests of the parties must be adverse; (3) the parties seeking relief must have a legally protectible interest in the controversy; and (4) the issues between the parties must be ripe for judicial determination." *Jenkins*, 675 P.2d at 1148 (cleaned up). It is the third requirement—that the party seeking relief have a legally protectible interest in the controversy—that is at issue here.

¶34 Generally speaking, a party has an interest that is legally protectible for purposes of standing if it has a claim for relief that "emanates from . . . the common law, a statute, or the constitution." *See Haik v. Jones*, 2018 UT 39, ¶ 39, 427 P.3d 1155 (Lee, A.C.J.,

concurring in part and concurring in the judgment).[6] Here, Summit County has not argued that it has a constitutional or common law right of action. Instead, it relies entirely on the Declaratory Judgment Act based on rights it claims emanate from several different statutes.

¶35 We rejected a similar argument in *Miller v. Weaver*. 2003 UT 12. *Miller* explains that when a party's declaratory judgment claim is rooted in statute, not the constitution or common law, a legally protectible interest comes from an express or implied statutory right of action. *See generally id.* In that case, a group within the Spanish Fork High School community, including students, former students, and parents of students, expressed concern about a psychology teacher's professional competence and performance. *Id.* ¶ 5. The group sought recourse under the Declaratory Judgment Act, asking for "judicial declarations of whether [the teacher] had violated various state statutes governing the conduct of teachers and psychologists." *Id.* In attempting to demonstrate a legally protectible interest in the controversy, the plaintiffs pointed to a statute that, in their view, gave them a "right of action . . . against a teacher for violation of any statute that concerns the professional competence or performance, or ethical conduct, of a teacher." *Id.* ¶ 18. The statute provided that "[n]o civil action by or on behalf of a student" could "be brought in a court until" certain procedural requirements were met. *See id.* (cleaned up).

¶36 We rejected the argument that this statute granted a right that was legally protectible for purposes of the Declaratory Judgment Act. *Id.* ¶¶ 19–25. Interpreting the statute, we noted the absence of express language that would create a right of action, and we declined to recognize one by inference. *Id.* ¶¶ 19–20. And because "a method for remedying violations of the statutory guidelines" already existed, we concluded that "it would be inconsistent with the Legislature's statutory scheme" to infer that the legislature intended to permit the plaintiffs to enforce the statutory requirements. *Id.* ¶¶ 21–22. Accordingly, we held that the plaintiffs did not have "a legally protectible interest in th[e]

---

[6] Justice Lee's concurrence in *Haik* focused on public interest standing. We cite it only for its articulation of the principles that animate this appeal.

controversy" and could not assert a claim under the Declaratory Judgment Act.[7] *Id.* ¶¶ 25, 28.

¶37   Although here, unlike in *Miller*, the parties frame the issue in terms of standing, the legally-protectible-interest throughline leads us to apply our reasoning in *Miller* and conclude that Summit County may not proceed with its claims. The controversy revolves around the annexation of land into the Town of Hideout, which resulted from the annexation process created by the legislature. And because Summit County does not claim a legally protectible interest under the constitution or common law, it must identify a statutory right of action—either express or implied. *See Bleazard v. City of Erda*, 2024 UT 17, ¶ 43, __ P.3d __ (explaining that this requirement has been "commonly referred to as 'statutory standing'" (cleaned up)). As we discuss below, it has not done so.

*A. The Annexation Code Does Not Create a Legally Protectible Interest for Summit County*

¶38   Given that Summit County seeks to invalidate Hideout's annexation based on an allegedly faulty process, the annexation code is the most intuitive place to look for a right of action that would aid Summit County in establishing a legally protectible interest in the annexation. Yet Hideout initiated the annexation under the process in the annexation code that was established by H.B. 359S1, which, Summit County concedes, does not expressly provide counties with a right of action. And Summit County makes no attempt to argue that the annexation code implies a right to seek relief for Hideout's alleged non-compliance with the code's terms.

---

[7] Summit County mentions *Utah Restaurant Ass'n v. Davis County Board of Health*, 709 P.2d 1159 (Utah 1985), as being "analogous" to the circumstances here. In that case, we held that a restaurant association, as well as one of its member restaurants, had standing under the Declaratory Judgment Act to challenge the validity of a county-created fee regulation. *Id.* at 1160–63. But we did not address the central issue Summit County confronts in asserting standing here: whether the legislature gave either the association or its members a legally protectible interest in the controversy. And there, "neither party briefed the questions of jurisdiction or standing," *id.* at 1160, so our holding was unaided by the adversarial process. Because we developed the precise question at issue here most fully in *Miller*, *see supra* ¶¶ 35–37, that case is the most helpful.

¶39 During the relevant period, the annexation code allowed a municipality (here, Hideout) to "annex an unincorporated area without . . . the consent of the county in which the area proposed for annexation [was] located" (here, Summit County) and "adopt an ordinance approving the annexation of the area proposed for annexation . . . without allowing or considering protests." *See id.* § 10-2-418(3), (9)(b)(i) (July 1, 2020). This is what Hideout purports to have done. The fact that the legislature foreclosed outside counties from taking part in the annexation process suggests it did not intend to imply a right of action that would allow a county to challenge the annexation process after the fact. Thus, the annexation code, at least in the form as it existed for just over one hundred days in 2020, did not confer upon Summit County a legally protectible interest allowing it to bring its claims under the Declaratory Judgment Act.

### B. The Other Statutes Summit County Relies on Do Not Give It a Legally Protectible Interest in the Controversy

¶40 Perhaps given the annexation code's lack of a right of action in its favor, Summit County takes aim elsewhere. Following the County's lead, the district court identified four sections of the Utah Code—sections of CLUDMA, LUDMA, and OPMA—as sources of standing for Summit County to challenge the annexation. On appeal, Summit County defends only two of the four sections the district court cited and identifies four others that, in its view, provide alternate bases on which the court's standing decision can be affirmed.[8] *See Croft v. Morgan Cnty.*, 2021 UT 46,

---

[8] The district court concluded that Utah Code subsections 17-27a-103(2)(a) and 10-9a-103(2)(a) authorize Summit County to bring its claims. Those provisions define the term "[a]dversely affected party" under both CLUDMA and LUDMA as an owner of "real property adjoining the property that is the subject of a land use application or land use decision."

On appeal, Hideout maintains these statutes are irrelevant to the standing question because (1) they are mere "definitional provision[s]" and (2) there is no land use application or land use decision at issue. And Summit County seems to agree, characterizing the issue as a "red herring[]." Because Hideout has made "a *prima facie* showing of a plausible basis for reversal," which Summit County does not dispute, we reverse the district court's determination on these points. *See AL-IN Partners, LLC v.*

(continued . . .)

¶ 43, 496 P.3d 83 ("We will affirm the ruling of a lower court on alternate grounds . . . when the ground or theory is apparent on the record." (cleaned up)).

¶41 We conclude that these statutory provisions do not satisfy the demands of the Declaratory Judgment Act such that Summit County can proceed with its claims. The provisions—none of which are within the annexation code itself—recite statements of purpose, provide for general enforcement authority, and circumscribe judicial review. They do not, as is required under our caselaw, give Summit County a legally protectible interest in the controversy.

1. CLUDMA's Statutory Purposes Under Utah Code Subsection 17-27a-102(1)

¶42 Summit County now invokes Utah Code subsection 17-27a-102(1) to claim standing. That subsection outlines CLUDMA's general purposes in furtherance of the public interest, and it authorizes counties to enact "ordinances, resolutions, and rules" to further those purposes.[9] UTAH CODE § 17-27a-102(1).

---

*LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 (cleaned up); *see also id.* ("[W]hen an appellee fails to present us with any argument, an appellant need only establish a *prima facie* showing of a plausible basis for reversal." (cleaned up)).

[9] The general purposes provision reads in full:
(1)(a) The purposes of this chapter are to:
(i) provide for the health, safety, and welfare;
(ii) promote the prosperity;
(iii) improve the morals, peace, good order, comfort, convenience, and aesthetics of each county and each county's present and future inhabitants and businesses;
(iv) protect the tax base;
(v) secure economy in governmental expenditures;
(vi) foster the state's agricultural and other industries;
(vii) protect both urban and nonurban development;
(viii) protect and ensure access to sunlight for solar energy devices;

(continued . . .)

¶43 A statute's broad statements of purpose, however, are different from a statutory right of action, which is what Summit County needs to establish a legally protectible interest. *Cf. Wash. Cnty. Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 8, 82 P.3d 1125 (explaining that "the broad statements of purpose to be served by water conservancy districts are insufficient to establish statutory standing . . . where a district's own uses would not be affected"). So while it may be true that CLUDMA is designed to further the public interest through its enumerated purposes, that design falls short of conferring on Summit County a legally protectible interest in the annexation. And where Summit County has not advanced a cause of action under CLUDMA, we are doubly skeptical about Summit County's invocation of this provision to support its standing claim.

2. General Enforcement Authority Under Utah Code Sections 17-18a-405(3), 17-18a-502, 17-27a-802(1)(a), 52-4-303(1)

¶44 Summit County claims to be an "enforcement authority with standing." Because Hideout's proposed zoning of the annexation area may ultimately conflict with Summit County's general plan and development code, Summit County contends the Utah Code empowers it to "'enforce and prosecute'" that potential conflict. (Quoting UTAH CODE § 17-18a-502.) For support, Summit County cites four provisions of the Utah Code, which state as follows:

- "A public prosecutor may act as legal counsel to the state, county, government agency, or government entity regarding . . . civil actions incidental to or appropriate to supplement a public prosecutor's duties, including an injunction, a habeas corpus, a declaratory action, or an extraordinary writ action, in which the interests of the state may be affected." UTAH CODE § 17-18a-405(3).

---

(ix) provide fundamental fairness in land use regulation;
(x) facilitate orderly growth and allow growth in a variety of housing types; and
(xi) protect property values.

UTAH CODE § 17-27a-102(1)(a).

- "The civil counsel shall enforce and prosecute, in the appropriate court, civil violations of a county ordinance." *Id.* § 17-18a-502.

- "A county . . . may, in addition to other remedies provided by law, institute: (i) injunctions, mandamus, abatement, or any other appropriate actions; or (ii) proceedings to prevent, enjoin, abate, or remove [an] unlawful building, use, or act." *Id.* § 17-27a-802(1)(a).

- "The attorney general and county attorneys of the state shall enforce [OPMA]." *Id.* § 52-4-303(1).

¶45 Even if we were to determine that these provisions grant Summit County a right to sue in some circumstances, Summit County has not explained their relevance here. The first provision noted above permits a "public prosecutor" to serve as legal counsel on a county's behalf in "civil actions incidental to or appropriate to supplement a public prosecutor's duties." *Id.* § 17-18a-405(3). We cannot say this provision, which identifies the civil responsibilities of county prosecutors, endows the county with a substantive right to challenge an annexation. *See id.*

¶46 Similarly, the second provision authorizes "civil counsel" to "enforce and prosecute . . . civil violations of a county ordinance." *Id.* § 17-18a-502. Again, this is a square peg in a round hole. This provision empowers a county civil attorney to bring civil enforcement actions for civil violations of county ordinances. It does not provide the county with the right to challenge a municipality's ordinance as void.

¶47 The third provision, a provision of CLUDMA, empowers counties to "institute . . . injunctions, mandamus, abatement, or any other appropriate actions; or . . . proceedings to prevent, enjoin, abate, or remove [an] unlawful building, use, or act." *Id.* § 17-27a-802(1)(a). This provision may seem, at first glance, to apply, given that Summit County seeks injunctive relief. But Summit County has not challenged the annexation as violating CLUDMA. Nor has it identified any text in CLUDMA that would suggest the legislature intended that the enforcement authority given to Summit County under CLUDMA should apply outside of the act. *See Gardner v. Bd. of Cnty. Comm'rs*, 2008 UT 6, ¶ 19 n.4, 178 P.3d 893 ("[S]ection 802 provides a means to challenge procedural violations of CLUDMA."), *abrogated on other grounds by Utah Res. Int'l, Inc. v. Mark Techs. Corp.*, 2014 UT 59, 342 P.3d 761.

¶48 The fourth provision, a provision of OPMA, entitles "[t]he attorney general and county attorneys" to "enforce" OPMA. UTAH CODE § 52-4-303(1). But again, this provision does not purport to give Summit County a legally protectible interest in an annexation by another municipality. And although Summit County does challenge the annexation as violating OPMA, its general authority to enforce OPMA does not determine Summit County's standing here. *Cf. Buckner v. Kennard*, 2004 UT 78, ¶ 38, 99 P.3d 842 (differentiating the power to enforce a statute on the public's behalf from a statutory remedy for an alleged personal injury). OPMA does identify a class of plaintiffs with a right to sue: "A person denied any right under" OPMA "may commence suit in a court of competent jurisdiction to . . . compel compliance with or enjoin violations of [OPMA]; or . . . determine [OPMA's] applicability to discussions or decisions of a public body." UTAH CODE § 52-4-303(3). Yet rather than argue that it is a person denied a right under OPMA, Summit County instead invokes its attorney's enforcement authority. And it does so without explaining how that authority enables it to proceed under the circumstances here.

3. References to Court Review Under Utah Code Section 10-9a-801(3)(a), (5)

¶49 Summit County tosses one additional statute into the mix. It contends that Utah Code subsections 10-9a-801(3)(a) and (5) create a statutory claim for review of land use regulations. These provisions of LUDMA state:

> (3)(a) A court shall:
>
>> (i) presume that a land use regulation properly enacted under the authority of this chapter is valid; and
>>
>> (ii) determine only whether:
>>
>>> (A) the land use regulation is expressly preempted by, or was enacted contrary to, state or federal law; and
>>>
>>> (B) it is reasonably debatable that the land use regulation is consistent with this chapter.
>>
>> . . .
>
> (5) If the municipality has complied with Section 10-9a-205, a challenge to the enactment of a land use regulation or general plan may not be filed with the district court more than 30 days after the enactment.

15

UTAH CODE § 10-9a-801(3)(a), (5). These provisions do not give Summit County what it needs. At most, they narrow the scope of district court review of land use regulations. Under our caselaw, "we . . . require more than a mere allusion to 'civil actions' as evidence of a legislative intent to impart substantive rights." *Miller v. Weaver*, 2003 UT 12, ¶ 21, 66 P.3d 592 (cleaned up). These provisions' references to court review of land use regulations are not enough to confer on Summit County a legally protectible interest in the annexation.

¶50 Thus, for various reasons, each section of the Utah Code that Summit County invokes independently fails to create a legally protectible interest for purposes of the Declaratory Judgment Act.

## II. THE DOCTRINE OF PUBLIC INTEREST STANDING DOES NOT SAVE SUMMIT COUNTY'S CLAIMS

¶51 The district court alternatively concluded that Summit County has public interest standing because the annexation "is a matter of great public interest and societal impact." Because this conclusion is inconsistent with our holding in *McKitrick v. Gibson*, 2021 UT 48, 496 P.3d 147, we disagree.

¶52 Under our caselaw, we "may grant standing where matters of great public interest and societal impact are concerned."[10] *Gregory v. Shurtleff*, 2013 UT 18, ¶ 12, 299 P.3d 1098 (cleaned up). But this form of standing, which we often refer to as alternative standing or public interest standing, does not apply if a plaintiff's claims arise from a statutory scheme that excludes the plaintiff.

¶53 In *McKitrick*, for example, Gibson sought to appeal the decision of a local appeals board under the Utah Government Records Access and Management Act (GRAMA). 2021 UT 48, ¶ 1. The problem was that the legislature specified in GRAMA who could appeal such decisions, and Gibson was not one of them. *Id.* ¶ 43. Gibson tried to evade this built-in statutory restriction by asserting traditional and alternative standing. *Id.* ¶ 45. He was unsuccessful, however, because plaintiffs who lack standing under

---

[10] We note that "members of this court have expressed serious doubt about the intellectual underpinnings of the doctrine [of public interest standing] and have invited further discussion of its continued viability." *Haik v. Jones*, 2018 UT 39, ¶ 23 n.5, 427 P.3d 1155. Where neither party on appeal has invited that discussion, we leave it for another day.

the statute through which they stake their claim may not cure that deficiency through traditional or alternative standing. *See id.* ¶¶ 48, 50. This being so, we declined to consider the merits of Gibson's alternative standing argument, *see id.* ¶ 15 n.5, holding that "because he lack[ed] standing under the plain language of the statute under which he is a claimant, Gibson [could] not proceed on . . . alternative standing grounds," *id.* ¶ 50.

¶54 Summit County's claims similarly arise from a statutory scheme—the annexation code—the relevant version of which excluded Summit County from the annexation process by permitting a municipality to annex land in another county without that county's input or objection. For the reasons we gave in *McKitrick*, Summit County may not evade this built-in statutory restriction by asserting alternative standing. We therefore decline to consider the merits of Summit County's alternative standing argument.

## CONCLUSION

¶55 We reverse the district court's denial of Hideout's motion for summary judgment. Summit County has not identified a legally protectible interest in the controversy, a necessary ingredient in a declaratory judgment action. And the doctrine of public interest standing does not rescue Summit County, because its claims are rooted in a statutory scheme from which it was excluded. We therefore hold that Summit County lacks standing to bring its claims and direct the district court to dismiss the action.

---