*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 17**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JOHN BLEAZARD, an individual, MARK BLEAZARD, an individual, and SIX MILE RANCH COMPANY, a Utah Corporation,
*Appellees*,
*v.*

CITY OF ERDA and DEIDRE M. HENDERSON, in her Official Capacity as Lieutenant Governor of Utah,
*Appellants*.

Nos. 20221008, 20221009
Heard January 10, 2024
Filed June 13, 2024

On Appeal of Interlocutory Order

Third District, Tooele County
The Honorable Teresa L. Welch
No. 220300134

Attorneys:

Robert E. Mansfield, Megan E. Garrett, Salt Lake City,
for appellees

Janet M. Conway, Wanship, for appellant City of Erda

Sean D. Reyes, Att'y Gen., Scott D. Cheney, Asst. Att'y Gen.,
Andrew Dymek, Asst. Solic. Gen., Salt Lake City, for appellant
Deidre M. Henderson

JUSTICE HAGEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE POHLMAN joined.

JUSTICE HAGEN, opinion of the Court:

## INTRODUCTION

¶1 The Utah Code establishes the process by which a municipality may be incorporated. In 2018, a group of local citizens sponsored the incorporation of an area in Tooele County that would be known as the City of Erda. Erda's incorporation took effect once the citizens of Tooele County voted to incorporate Erda and the Lieutenant Governor certified that the statutory process had been completed.

¶2 After the Lieutenant Governor certified Erda's incorporation, three owners of land within Erda's boundaries—John Bleazard, Mark Bleazard, and Six Mile Ranch Company (collectively, the Landowners)—challenged the incorporation, requesting relief under the Utah Declaratory Judgment Act. The Landowners sought to undo the incorporation based on alleged statutory violations that occurred during the incorporation process. Erda and the Lieutenant Governor, the defendants named in the lawsuit, moved to dismiss the Landowners' complaint, each offering reasons why the court could not or should not entertain the case. As relevant here, they argued that the Landowners lacked statutory standing. The district court disagreed with Erda and the Lieutenant Governor and denied their motions to dismiss. Erda and the Lieutenant Governor separately petitioned for interlocutory appeal. We agreed to hear both appeals, which we resolve in this consolidated opinion.

¶3 We hold that the Landowners' claim for declaratory relief must be dismissed as a matter of law because it is non-justiciable. Under Utah law, a declaratory judgment action is non-justiciable if the plaintiff lacks a protectible legal interest in the controversy. In other words, the plaintiff must have a legal right at stake. Where the requested relief is a declaration that defendants have not complied with certain statutory requirements, we look to whether the plaintiff has a legal right to enforce those requirements. In some cases, the alleged non-compliance with the statute may implicate pre-existing legal rights arising from the state or federal constitution, common law, or statute. But here, the Landowners point to no common law right or constitutional provision they seek to enforce and rely only on the incorporation code itself.[1] Because the legislature did not grant affected citizens a private right of

---

[1] We refer to Title 10, Chapter 2A of the Utah Code as the incorporation code.

action to enforce the incorporation code's requirements, the Landowners do not have a protectible legal interest in their claim. Therefore, we hold that this case is non-justiciable and reverse the district court's decision.

## BACKGROUND[2]

¶4　To provide context, we begin with a synopsis of the process of incorporation under Utah law as it is relevant here. We then summarize the events that led to Erda's incorporation, as well as the proceedings that prompted this appeal.

### *The Incorporation Process*

¶5　The Utah Legislature has established a statutory process for incorporating a municipality. That process, set forth in the incorporation code, involves several steps. *See* UTAH CODE §§ 10-2a-101 to -414 (2018).[3]

¶6　The first step requires the sponsors of a proposed incorporation to file "a request for a feasibility study" with the lieutenant governor. *Id.* § 10-2a-202(1). Among other requirements, the request must include signatures from property owners who represent ten percent of private land by area and seven percent of private land by value within the proposed incorporated area. *Id.* § 10-2a-202(2)(a). Signatures made on behalf of a property owner must indicate "the person's representative capacity and the name of the owner the person represents," and the signer must provide substantiating documentation. *Id.* § 10-2a-102(3)(b).

¶7　The lieutenant governor reviews the feasibility study request to determine whether it meets the statutory requirements.

---

[2] Because this appeal arises from the district court's denial of Erda's and the Lieutenant Governor's motions to dismiss, "we accept the factual allegations in the complaint as true and interpret those facts, and all reasonable inferences drawn therefrom, in a light most favorable" to the Landowners as the nonmoving parties. *See Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 3, 108 P.3d 741.

[3] The incorporation code instructs that for incorporations initiated before May 14, 2019, the process is governed by the law in effect at the time the incorporation was initiated. *See* UTAH CODE § 10-2a-106(1) (2024). Because the sponsors initiated the incorporation of Erda in October 2018, the version then in effect applies here. Accordingly, in this opinion we reference the 2018 version of the incorporation code unless otherwise indicated.

*Id.* § 10-2a-204(1)(a). If she determines that it does, she certifies it, and the feasibility study moves forward. *Id.* § 10-2a-204(1)(b)(i).

¶8   A designated "feasibility consultant" completes the feasibility study, submits a written report, and presents the results at two or more public hearings. *Id.* §§ 10-2a-205(3), -207(1). As part of the study, the feasibility consultant estimates the proposed city's projected revenue and cost of governmental services over a five-year period. *Id.* § 10-2a-205(4)(a)(iv)–(v). The incorporation process may not proceed "unless the results of the feasibility study . . . show that the average annual amount of revenue . . . does not exceed the average annual amount of cost ... by more than 5%." *Id.* § 10-2a-208(3).

¶9   If the results of the feasibility study are favorable, the incorporation sponsors may petition to place the incorporation proposal on the ballot. *See id.* § 10-2a-208(1)–(2). This petition has its own signature requirement, although the signatures from the feasibility study request carry over to the petition under certain circumstances. *See id.* § 10-2a-208(2)(a), (4). If the lieutenant governor determines that the petition meets the statutory requirements, she certifies it, and the measure is placed on the election ballot. *Id.* §§ 10-2a-209(1)(b)(i), -210.

¶10  The election code governs incorporation elections. *Id.* § 10-2a-104. If a proposed incorporation receives a majority vote, then "the area shall incorporate." *Id.* § 10-2a-210(3). After the incorporation election results are certified, another election is held to select the mayor and other officials of the new city. *See id.* §§ 10-2a-213, -215.

¶11  To complete the incorporation process, the mayor-elect must submit a notice of impending boundary action to the lieutenant governor "within 30 days after the canvass of the final election of city officers." *Id.* § 10-2a-217(1)(a)(i). The notice must "contain a statement . . . certifying that all requirements applicable to the boundary action have been met." *Id.* § 67-1a-6.5(3)(e)(i) (2018). Along with the notice, the mayor-elect must submit an approved final local entity plat that has been validated by the county surveyor. *Id.* § 10-2a-217(1)(a)(ii); *id.* § 67-1a-6.5(1)(b) (2018).

¶12  The lieutenant governor determines whether the notice of impending boundary action meets the statutory requirements. *Id.* § 67-1a-6.5(2)(a)(i)(A) (2018). If she determines that it does, she issues a certificate of incorporation, *id.*, at which time "[t]he incorporation is effective," *id.* § 10-2a-217(2)(a).

4

¶13 "[A] city is conclusively presumed to be lawfully incorporated" if certain conditions are met. *See id.* § 10-2a-217(2)(b). For a city incorporated on or after July 1, 1998, this conclusive presumption is applied "if, for two years following the city's incorporation," (1) "the city has levied and collected a property tax [or] . . . the city has imposed a sales and use tax," and (2) "no challenge to the existence or incorporation of the city has been filed in the district court for the county in which the city is located." *Id.*

*Erda's Incorporation*

¶14 In October 2018, a group of sponsors set out to incorporate an area in Tooele County that would be known as the City of Erda. The sponsors prepared a feasibility study request by soliciting signatures from landowners in the proposed incorporation area. As part of that effort, they contacted John and Mark Bleazard. John and Mark each own residential property located in the incorporation area. They are also minority owners of Six Mile Ranch Company, which owns a 6,000-acre property located in the incorporation area.

¶15 According to the Landowners' complaint, when John and Mark were approached for their signatures, they were not provided with a map of the proposed incorporation area. Nor were they informed that the area included Six Mile Ranch. Instead, John and Mark were told that only their residential properties were part of the proposed incorporation area, and they signed the request based on that understanding.

¶16 The Landowners allege that John and Mark were never asked to sign the feasibility study request on Six Mile Ranch's behalf, and, in any event, they were not authorized to do so. They further allege that John and Mark were not asked to provide documentation to substantiate their ownership interest in Six Mile Ranch and that none of the other owners of Six Mile Ranch were contacted about the feasibility study request. Yet the signature page of the feasibility study request included a handwritten notation in the margin next to John's and Mark's signatures identifying them as the "Owners of 'Six Mile Ranch.'" The Landowners allege that the sponsors made this notation.

¶17 According to the complaint, the sponsors submitted the request for a feasibility study with John's and Mark's misrepresented signatures. Once the results of the feasibility study were published, John and Mark contested Six Mile Ranch's inclusion in the proposed incorporation area. They each sent letters to the Lieutenant Governor regarding the signatures they provided

for the feasibility study request. John stated in his letter that "it was never stated or implied that [he] was signing for anything other than a feasibility study to move forward," that he "did not or could not sign as a representative of Six Mile Ranch," and that he "was never informed that any Six Mile Ranch property was being considered as part of the Erda City boundaries." Mark similarly stated in his letter that "it was never discussed or implied that [he] was signing for anything other than [his] own property in Erda" and that he "did not or could not sign as a representative of Six Mile Ranch . . . without first consulting the other owners."

¶18 The Landowners allege that the Lieutenant Governor's office acknowledged the letters and notified the sponsors that if the information John and Mark provided was accurate, then there would be "an argument that the original petition should not have been certified, and that could be grounds for someone to challenge the validity of the election if the votes are in favor of incorporation." Still, the sponsors moved forward with the incorporation process and filed a petition for incorporation. The signatures that John and Mark previously provided were used to satisfy the signature requirement for the petition's filing.

¶19 The Lieutenant Governor certified the petition, and an incorporation election was held in 2020. The incorporation measure passed, and the election of city officers was completed by November 16, 2021. But Erda's mayor-elect did not submit a notice of impending boundary action with an approved final local entity plat by December 16, 2021, because the county surveyor refused to approve the plat. After the sponsors sought and obtained a court order compelling the county surveyor to approve the plat, the approved plat was delivered to the Lieutenant Governor on December 30, 2021. A few days later, the Lieutenant Governor certified the incorporation.

*The Landowners' Challenge*

¶20 The Landowners filed a complaint against Erda and the Lieutenant Governor, seeking relief under the Declaratory Judgment Act, *see* UTAH CODE §§ 78B-6-401 to -412.[4] The

---

[4] Before the district court entered its ruling on the motions to dismiss, the Landowners moved to amend their complaint to add a claim for extraordinary relief under rule 65B of the Utah Rules of Civil Procedure. That motion has yet to be ruled upon and has no bearing on our analysis in this appeal.

Landowners sought a declaration that the following instruments were invalid: the feasibility study request, the petition for incorporation, and the certificate of incorporation.

¶21 The Landowners offered two bases for the requested relief. First, they claimed that because the feasibility study request and petition for incorporation were submitted to the Lieutenant Governor with misrepresented signatures, the request and petition did not meet the statutory requirements. Specifically, John and Mark alleged that they had signed the feasibility study request as individual residential property owners, yet the sponsors characterized the signatures as representing Six Mile Ranch to meet the statutory signature threshold. And they alleged that their signatures were again used as if they represented Six Mile Ranch to satisfy the signature requirement for the petition for incorporation. Based on these alleged deficiencies in the incorporation process, the Landowners maintained that Erda's incorporation was "invalid from its inception."

¶22 Second, the Landowners claimed that the notice of impending boundary action was not timely submitted to the Lieutenant Governor. Based on the thirty-day statutory deadline, *see id.* § 10-2a-217(1)(a), the Landowners argued that the notice must have been submitted by December 16, 2021. Although the mayor-elect did submit the notice on that date, the Landowners allege that the notice was deficient at that time because the final entity plat had not been approved by the county surveyor. An approved plat was not submitted until December 30, 2021. According to the Landowners, this missed deadline invalidated the incorporation.

¶23 Erda and the Lieutenant Governor each moved to dismiss the complaint. Relevant to this appeal, both defendants argued that the Landowners lacked statutory authorization to pursue this action.

¶24 As part of its argument, Erda contended that the Landowners' challenge is barred because the relevant statutes do not "grant property owners a private right to bring an action" to challenge the validity of the incorporation process. In other words, although Utah statutes may provide some remedies to parties like the Landowners, this suit is not one of those statutorily authorized remedies.

¶25 The Lieutenant Governor similarly argued that the Landowners had not invoked a statute that "creates a right of action

for judicial review of government's performance of statutory functions." The absence of a statutory right of action is decisive, the Lieutenant Governor maintained, because the Declaratory Judgment Act does not itself create a private right of action, and it requires a plaintiff to have an independent legally protectible interest in the controversy. (Citing *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983).) The Landowners lack such an interest, according to the Lieutenant Governor, because no relevant provision of law "creates a protectable interest for disgruntled landowners and taxpayers to retroactively invalidate the certified incorporation."

¶26 While the Lieutenant Governor acknowledged that a provision of the incorporation code, Utah Code subsection 10-2a-217(2)(b), mentions a "challenge to the existence or incorporation of [a] city," she argued that the provision does not create a private right of action. Subsection (2)(b) provides as follows:

> (b) Notwithstanding any other provision of law, a city is conclusively presumed to be lawfully incorporated and existing if, for two years following the city's incorporation:
>
>> (i)(A) the city has levied and collected a property tax; or
>>
>> (B) for a city incorporated on or after July 1, 1998, the city has imposed a sales and use tax; and
>>
>> (ii) no challenge to the existence or incorporation of the city has been filed in the district court for the county in which the city is located.

UTAH CODE § 10-2a-217(2)(b).

¶27 The Lieutenant Governor pointed out that subsection (2)(b) "does not create an express right of action" or "specify any people" that have the right to challenge a certified incorporation. Based on those omissions, the Lieutenant Governor argued that the Landowners lack statutory standing to challenge Erda's incorporation under subsection (2)(b).

¶28 The Landowners urged the court to allow their claim to proceed. In response to the argument that they lack a legally protectible interest in enforcing the statutory incorporation

requirements, the Landowners contended that the incorporation code gives them rights in the incorporation process. These rights, they added, include "the right to sign, or refuse to sign, the request for feasibility study" and "the right to expect that the Lieutenant Governor would not recognize [the Landowners'] signatures [as] having been given on behalf of Six Mile Ranch." The Landowners justified their ability to challenge the incorporation based on these purported interests.

¶29 Although the Landowners conceded that Utah law does not expressly provide a mechanism that allows them to challenge Erda's incorporation, they argued that subsection (2)(b) recognizes the possibility that an incorporation can be challenged. The Landowners reasoned that to conclude otherwise would render superfluous the statute's reference to a "challenge" to a city's existence or incorporation. (Citing UTAH CODE § 10-2a-217(2)(b)(ii).)

¶30 From the Landowners' perspective, subsection (2)(b) "clearly provides that an incorporation may be challenged" but "does not provide a statutory scheme for effectuating" such a challenge. In their view, the statute's silence on how a challenge could be brought was not conclusive. The Landowners asserted they were "not required to show statutory standing to maintain[] their claims," as the Lieutenant Governor argued, but rather they could challenge Erda's incorporation upon a showing of "traditional standing."[5]

¶31 The district court denied the motions to dismiss. The court agreed with the Landowners that the incorporation code authorizes them to challenge Erda's incorporation. For two reasons, the court determined that Utah Code subsection 10-2a-217(2)(b) provides that authorization. First, the court determined that under the surplusage canon of statutory interpretation, subsection (2)(b)'s reference to a "challenge" to a city's existence or incorporation must hold "meaning and significance." To the court, that language "contemplates" that a party may challenge an incorporation, even after the incorporation is certified.

---

[5] "Our traditional standing test requires plaintiffs to allege that they have suffered or will suffer some distinct and palpable injury that gives them a personal stake in the outcome of the legal dispute." *S. Utah Wilderness All. v. Kane Cnty. Comm'n*, 2021 UT 7, ¶ 16, 484 P.3d 1146 (cleaned up).

¶32 Second, the court alluded to Utah caselaw regarding conclusive presumptions. The court gleaned from this caselaw that because subsection (2)(b) effectively precludes someone from challenging an incorporation after it is conclusively presumed to be valid, it "logically follows that there would be some grounds for someone to raise a legal and successful challenge to an incorporation *before*" the conclusive presumption is triggered.

¶33 The district court also agreed with the Landowners that because the incorporation code is silent about who may challenge an incorporation, the traditional standing test applies. And the court concluded that the Landowners' claim meets that test.

¶34 Erda and the Lieutenant Governor sought permission to appeal the district court's interlocutory order denying their motions to dismiss. We granted the petition for interlocutory review.

## ISSUE AND STANDARD OF REVIEW

¶35 Erda and the Lieutenant Governor request that we reverse the district court's denial of their motions to dismiss. This presents "a question of law that we review for correctness, giving no deference to the district court's determination." *Christiansen v. Harrison W. Constr. Corp.*, 2021 UT 65, ¶ 10, 500 P.3d 825.

## ANALYSIS

¶36 The Landowners brought a single claim for relief, requesting a declaratory judgment that Erda's incorporation is invalid because two statutory requirements were not met: (1) the feasibility study request and petition for incorporation did not include the requisite signatures, and (2) the notice of impending boundary action was untimely. Erda and the Lieutenant Governor argue that the Landowners' claim must be dismissed. We agree.

¶37 We begin our analysis by clarifying the appropriate legal framework to be applied in this case. When plaintiffs request declaratory relief, they must show, among other things, that they have a legally protectible interest in the controversy. As we explain below, this inquiry depends on the nature of the asserted interest. Plaintiffs who seek a declaration that statutorily created requirements have been violated—and who do not invoke legal rights protected elsewhere, such as in the common law or the constitution—must show that they have so-called "statutory standing." More precisely, they must show that they fall "within the class of parties that the legislature authorized to file suit" to

enforce the statutory scheme. *See Haik v. Jones*, 2018 UT 39, ¶ 39, 427 P.3d 1155 (Lee, A.C.J., concurring in part and concurring in the judgment).[6] If the statute creates new legal requirements but does not grant plaintiffs a corresponding right to sue to enforce those requirements, the plaintiffs lack a legally protectible interest in the controversy, and the declaratory judgment action must be dismissed because it is not justiciable.

¶38 After laying the legal groundwork, we explain why the Landowners lack a legally protectible interest in Erda's incorporation. The Landowners attempt to enforce statutory requirements through a declaratory judgment, yet they have not identified a statutory private right of action. Nor have they invoked rights protected by the common law, the constitution, or another source. Because they lack a legally protectible interest, they may not proceed with their claim for declaratory relief.

I. PLAINTIFFS WHO SEEK A DECLARATORY JUDGMENT BASED SOLELY ON ALLEGED STATUTORY VIOLATIONS MUST BE WITHIN THE CLASS OF PERSONS THE LEGISLATURE HAS AUTHORIZED TO SUE TO ENFORCE THE STATUTE

¶39 The Declaratory Judgment Act "grants a district court jurisdiction to determine any question of construction or validity of a statute that affects the rights, status, or other legal relations of any person and to declare that person's rights, status, or legal relations under the statute." *Miller v. Weaver*, 2003 UT 12, ¶ 15, 66 P.3d 592; *see also* UTAH CODE § 78B-6-408. But to bring a declaratory judgment action, a plaintiff must show that "the justiciable and jurisdictional elements requisite in ordinary actions are present." *Weaver*, 2003 UT 12, ¶ 16 (cleaned up).

¶40 Our caselaw sets forth four elements that must be satisfied for a plaintiff to bring a declaratory judgment action: "(1) there must be a justiciable controversy; (2) the interests of the parties must be adverse; (3) the parties seeking relief must have a legally protectible interest in the controversy; and (4) the issues between the parties must be ripe for judicial determination." *Jenkins v. Finlinson*, 607 P.2d 289, 290 (Utah 1980). Our holding in this case turns on the third element—whether the Landowners have "a

_____

[6] Justice Lee's concurrence in *Haik* focused on public interest standing, something the Landowners do not assert on appeal. We cite the concurrence solely for its helpful articulation of statutory standing.

legally protectible interest residing with the party seeking relief." *See Miller*, 2003 UT 12, ¶ 15.

¶41    Generally speaking, a party has an interest that is legally protectible for purposes of standing if it has a claim for relief that "emanates from . . . the common law, a statute or the constitution," *see Haik v. Jones*, 2018 UT 39, ¶ 39, 427 P.3d 1155 (Lee, A.C.J., concurring in part and concurring in the judgment). Here, the Landowners do not claim to have a non-preempted common law right to sue over the incorporation. Nor do they allege that the incorporation violated their constitutional rights. Rather, their suit is based entirely on the defendants' alleged noncompliance with the incorporation code—the statutory scheme created by the legislature to govern the incorporation process. Because municipal incorporation is wholly a creature of statute, we must "look[] at the rights generally conferred by the statute" to determine if plaintiffs have a claim for relief. *See S. Utah Wilderness All. v. San Juan Cnty. Comm'n*, 2021 UT 6, ¶ 16, 484 P.3d 1160.

¶42    "[W]hether [a] plaintiff has a 'legally protectible interest' conferred by statute" hinges on "whether the [statute] generally provides [the plaintiff] with a right to sue for violations of the [statute]." *Id.* ¶¶ 15–16; *see also McKitrick v. Gibson*, 2021 UT 48, ¶ 18, 496 P.3d 147 (assessing whether the petitioner was "one of the persons the statute allows to seek judicial review"). We look to the relevant statute because, where the legislature creates statutory requirements, it is entitled to designate, as it "see[s] fit," how those requirements are to be enforced. *See McKitrick*, 2021 UT 48, ¶ 16. "And it is axiomatic that where [a] right of action is one created by statute, the law creating the right can also prescribe the conditions of its enforcement." *Id.* ¶ 17 (cleaned up).

¶43    This requirement—that a plaintiff be "within the class of parties that the legislature authorized to file suit"—is commonly referred to as "statutory standing." *Haik*, 2018 UT 39, ¶ 39 (Lee, A.C.J., concurring in part and concurring in the judgment). And "statutory standing is mandatory for statutory claims." *McKitrick*, 2021 UT 48, ¶ 48. Accordingly, in a declaratory judgment action to enforce a statute, statutory standing is an initial "hurdle" that a plaintiff must clear before a court proceeds to examine whether the plaintiff has shown traditional standing. *See Haik*, 2018 UT 39, ¶ 39 (Lee, A.C.J., concurring in part and concurring in the judgment). Stated differently, where a plaintiff argues that a statute has been violated, the plaintiff must be within the class of parties that the

legislature authorized to file suit for such a statutory violation, and "the presence of traditional or alternative standing will not cure a statutory standing deficiency." *McKitrick*, 2021 UT 48, ¶ 2.

¶44 Here, the Landowners claim to have "a private right of action for declaratory relief." However, the Declaratory Judgment Act "merely authorizes a new form of relief." *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983). It "does not create a cause of action or grant jurisdiction to the court where it would not otherwise exist." *Id.* A plaintiff seeking to enforce statutory requirements through a declaratory judgment action lacks a "legally protectible interest in the controversy" unless the plaintiff can identify an express or implied right of action. *See Miller*, 2003 UT 12, ¶¶ 16, 25; *see also Summit Cnty. v. Hideout*, 2024 UT 16, ¶ 37, __ P.3d __ (holding that Summit County lacked a legally protectible interest where it had not "identif[ied] a statutory right of action"). Because the Landowners do not assert a common law or constitutional right, they must establish statutory standing by identifying a statutory right of action—separate and apart from the Declaratory Judgment Act—that authorizes them to pursue the relief they request.

## II. THE LANDOWNERS LACK A LEGALLY PROTECTIBLE INTEREST BECAUSE THE INCORPORATION CODE DOES NOT PROVIDE THEM WITH A PRIVATE RIGHT OF ACTION

¶45 Aside from the Declaratory Judgment Act, the Landowners rely only on the incorporation code as the source of their legally protectible interest. Accordingly, they must show that the incorporation code grants them a private right of action to enforce its provisions. "A private statutory right of action exists when a private party can bring a lawsuit for relief from injuries caused by another's violation of a . . . statute." *Buckner v. Kennard*, 2004 UT 78, ¶ 37, 99 P.3d 842 (cleaned up). This stands in contrast to enforcement authority granted to the state. For example, "a statute requiring drivers to remove car keys and lock the vehicle can be enforced by the state[] but does not establish a duty owed to a private individual who died when hit by a stolen car whose owner had violated the statute." *Id.* ¶ 38.

¶46 Whether a party has a statutory private right of action "is a question of statutory interpretation." *Id.* ¶ 41. We "look first to the plain language of the statute for an express indication that a private right of action was intended." *Machan v. UNUM Life Ins. Co. of Am.*, 2005 UT 37, ¶ 24, 116 P.3d 342. Such an indication is made clear by "explicit language" that does not "require anyone to add language

or make inferences to impart the full meaning of the statute." *Miller v. Weaver*, 2003 UT 12, ¶ 21, 66 P.3d 592.

¶47 "In the absence of language expressly granting a private right of action in the statute itself, the courts of this state are reluctant to imply a private right of action based on state law." *Id.* ¶ 20. Our reluctance is amplified when, for example, discerning a right of action would "require[] us to infer language and meaning that does not appear on the face of the statute" or when doing so "would be inconsistent with the Legislature's statutory scheme." *See id.* ¶¶ 19, 22. As a result, "we are not generally in the habit of implying a private right of action." *Young v. Salt Lake City Sch. Dist.*, 2002 UT 64, ¶ 21, 52 P.3d 1230 (cleaned up). In fact, "Utah courts have rarely, if ever, found a Utah statute to grant an implied private right of action." *Buckner*, 2004 UT 78, ¶ 43.

¶48 The Landowners claim to have "a private right of action that is expressly referenced in Utah Code § 10-2a-217(2)(b)(ii)." The relevant portion of the incorporation code provides as follows:

> (b) Notwithstanding any other provision of law, a city is conclusively presumed to be lawfully incorporated and existing if, for two years following the city's incorporation:
>
>> (i)(A) the city has levied and collected a property tax; or
>>
>> (B) for a city incorporated on or after July 1, 1998, the city has imposed a sales and use tax; and
>>
>> (ii) no challenge to the existence or incorporation of the city has been filed in the district court for the county in which the city is located.

UTAH CODE § 10-2a-217(2)(b). Under the Landowners' reading, this subsection "recognizes the existence of a private right of action to challenge Erda's existence and incorporation." Unless their claim for declaratory relief is recognized as a "challenge" under subsection (2)(b), they reason, the subsection's reference to an incorporation challenge "is impermissibly rendered superfluous." The district court adopted this interpretation, concluding that the mention of a challenge "contemplates" claims like those brought by the Landowners.

¶49 This court rejected a similar argument in *Miller*. *See* 2003 UT 12, ¶ 19. In that case, the plaintiffs—a group challenging a schoolteacher's competence and performance—sued and requested "judicial declarations" that the teacher had violated various state statutes. *Id.* ¶ 5. As here, the question was whether the plaintiffs "possess[ed] a legally protectible interest" under a state statute. *Id.* ¶ 16. The plaintiffs cited a statute that, in their view, "grant[ed] a private right of action against a school district employee." *Id.* The statute read as follows:

> No civil action by or on behalf of a student relating to the professional competence or performance of a certified employee of a school district, or to the discipline of students by a certified employee, application of in loco parentis, or a violation of ethical conduct by an employee of a school district may be brought in a court until at least 60 days after the filing of a written complaint with the board of education of the district, or until findings have been issued by the board after a fair hearing on the complaint, whichever is sooner.

*See id.* ¶ 18 (citing UTAH CODE § 53A-7-202(1) (1997)). Because the provision seemed to assume that a "civil action by or on behalf of a student" could be brought in court sixty days after the filing of a written complaint, the plaintiffs asserted that it created "a new cause of action." *Id.* ¶ 19.

¶50 We rejected the plaintiffs' interpretation because it "impose[d] an unreasonable and unworkable construction[] and require[d] us to infer language and meaning" not apparent on the statute's face. *Id.* We explained that the statute's "manifest object" was "procedure," in that it restricted existent legal rights by imposing requirements to be met before a plaintiff could seek to remedy complaints against a teacher. *Id.* Thus, on its face, the statute did not contain a "clear indication . . . that a private right of action was intended." *Id.* ¶ 21.

¶51 We also declined to recognize an implied right of action. Even though the statute alluded to a civil action by or on behalf of a student brought in court, this "mere allusion" did not connote a legislative intent to impart a private right of action on the plaintiffs, particularly where the legislature had other manifest objects in mind. *Id.* ¶¶ 19, 21. Recognizing Utah courts' reluctance "to imply a private right of action based on state law," *id.* ¶ 20, we

emphasized that to infer a right of action "would be to override, by judicial fiat, a system which the Legislature has at least tacitly, if not expressly, sanctioned," *id.* ¶ 22 (cleaned up).

¶52   The Landowners' argument here is remarkably similar to the one we rejected in *Miller*. The Landowners contend that by alluding to a "challenge to the existence or incorporation of the city . . . filed in the district court," subsection (2)(b) "expresses a private right of action for a challenge to be mounted to the incorporation of a municipality within the first two years after incorporation." That argument fails for the same reasons we gave in *Miller*.

¶53   Looking "first to the plain language of the statute for an express indication that a private right of action was intended," *Machan*, 2005 UT 37, ¶ 24, we see none. Missing from subsection (2)(b) is explicit language conferring upon landowners—or upon any class of parties—a right to sue for violations of the incorporation code. On its face, subsection (2)(b) creates a conclusive presumption in favor of an incorporation two years after the incorporation takes effect, provided that enumerated conditions are met. The subsection merely acknowledges pre-existing rights, if any, such as constitutional claims or common law rights not preempted by the incorporation code. It does not, by its express language, create new rights for a class that includes the Landowners. As in *Miller*, "[w]e see no clear indication from the statute itself that a private right of action was intended." 2003 UT 12, ¶ 21.

¶54   Nor can we infer a private right of action. The Landowners resist this conclusion, observing that subsection (2)(b) sets forth the what-where-when of an incorporation challenge. After all, the Landowners reason, subsection (2)(b) refers to a "challenge" that is "filed in the district court" within "two years following" an incorporation. According to the Landowners, that language implicitly recognizes that a court challenge is available.

¶55   Yet that argument is indistinguishable from the one we rejected in *Miller*. *See id.* Like subsection (2)(b), the statute in *Miller* outlined the what-where-when of a statutory challenge, referring to a "civil action" filed "in a court" within "at least 60 days." *See id.* ¶ 18 (citing UTAH CODE § 53A-7-202(1) (1997)). Indeed, the statute in *Miller* also included the who: "a student." *See id.* (citing UTAH CODE § 53A-7-202(1) (1997)). With this in mind, our conclusion in *Miller*—that "we must require more than a mere allusion to 'civil actions,'" *id.* ¶ 21 (cleaned up)—applies with equal force here. We

require more than a reference to a "challenge" to an incorporation "filed in district court," *see* UTAH CODE § 10-2a-217(2)(b)(ii), "as evidence of a legislative intent to impart substantive rights," *see Miller*, 2003 UT 12, ¶ 21. Absent textual evidence to the contrary, we presume that the statute refers to challenges based on existent legal rights.[7] We will not infer that the legislature intended to create a new statutory right of action in such an oblique way. *See id.* ¶ 19.

¶56 In sum, we hold that the Landowners lack a legally protectible interest in Erda's incorporation. They seek to vindicate statutory violations through a declaratory judgment and need a corresponding private right of action to do so. Because they have not identified a private right of action, they lack a protectible interest in the controversy and are not entitled to declaratory relief.

## CONCLUSION

¶57 The Landowners seek a declaratory judgment that Erda and the Lieutenant Governor failed to comply with the provisions of the incorporation code. But the Landowners have not identified a private right of action that would allow them to enforce those provisions. Without a private right of action, the Landowners cannot show that they have a legally protectible interest in enforcing the incorporation code, a necessary component to bringing a declaratory judgment action. As a result, we hold that the Landowners' claim for declaratory relief must be dismissed, and we reverse the district court's decision.

––––––––––––––

[7] For instance, Erda asserts that a plaintiff has a private right of action for certain violations of the election code. The Lieutenant Governor adds that because self-executing constitutional provisions "create[] a private cause of action," subsection (2)(b)'s mention of an incorporation challenge may refer to a challenge premised on the violation of a constitutional right. Because the Landowners rely only on the Declaratory Judgment Act and the incorporation code—neither of which creates a private right of action—we express no opinion on whether another statute, the common law, or the constitution provides a private right of action to challenge an incorporation.