*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 18**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BRENT GORDON,
*Appellant,*

*v.*

JACKIE NOSTROM and HERRIMAN CITY,
*Appellees.*

No. 20230187
Heard November 8, 2023
Filed June 27, 2024

On Direct Appeal

Third District, Salt Lake County
The Honorable Todd M. Shaughnessy
No. 220907849

Attorneys:

Brent Gordon, Boise, Idaho, pro se appellant,

Matthew D. Church, Taylor P. Kordsiemon, Salt Lake City,
Todd R. Sheeran, Herriman, for appellees

JUSTICE HAGEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE POHLMAN joined.

JUSTICE HAGEN, opinion of the Court:

## INTRODUCTION

¶1   Brent Gordon believes that Herriman City has a policy in place that violates his right to inspect records under the Utah Government Records Access and Management Act (GRAMA). But instead of appealing Herriman's denial of a records request, he sued for an injunction that would prospectively require Herriman to allow him to inspect any public record free of charge. The district

court dismissed Gordon's case because it concluded that he needed to submit a formal records request and exhaust his administrative remedies before bringing suit.

¶2 Gordon asserts the district court erred because the Utah Code creates a right of action to enjoin a governmental entity from violating or proposing to violate GRAMA. But the code section Gordon relies on merely lists the remedies available for a GRAMA violation; it does not create a right of action. Because Gordon is not within the class of persons authorized by the legislature to sue for violations of GRAMA, we hold that the district court correctly dismissed his suit.

## BACKGROUND

¶3 On December 26, 2022, when Herriman City Hall was closed for the Christmas holiday, Gordon emailed Herriman's city attorney and announced he would be at the city offices the following morning to inspect "documents related to the West Traverse Sentinel Landscape Act and the Army Compatible Use Buffer Program." Citing his "right under state law to inspect records during business hours," Gordon advised the city attorney that he intended "to search through records to confirm the amount of money the city received through the Program, all communications and documents regarding the selection of properties purchased by the city, all documents that relate to restrictions on the use of the property, and any documents that identify the individuals that the city worked with at the state and Camp Williams." Because of the broad nature of the request, the city attorney responded that it would take some time to locate records responsive to Gordon's request and to segregate any non-public information.

¶4 The city recorder sent Gordon a follow-up email two days later, indicating that Herriman was treating Gordon's December 26th email as a GRAMA request. The city recorder advised Gordon that Herriman was entitled to ten business days to respond to the request but would try to make the records available more quickly. The email indicated that Utah law allowed Herriman to charge Gordon for "the cost of staff time for search, retrieval, and other direct administrative costs for complying with [the] request." The city recorder estimated it would "take approximately five (5) hours to compile the information sought and would cost approximately

$250." (Citing UTAH CODE § 63G-2-203.)[1] The email also notified Gordon that he could "appeal any or all portions of this decision" to the city manager.

¶5   Rather than appeal that decision, Gordon sued Herriman in district court, seeking injunctive relief in the form of an "order permitting [him] to inspect records free of charge during regular business hours." Herriman moved to dismiss Gordon's GRAMA claim for lack of jurisdiction because Gordon did not, as required by GRAMA, exhaust his administrative remedies.

¶6   The district court agreed with Herriman and dismissed Gordon's claim. The court acknowledged that it struggled to understand what aspect of Herriman's actions Gordon was challenging. But the court ruled that, no matter the challenge, Gordon was not entitled to judicial review because "[e]ither a formal GRAMA request was not made or, alternatively, if a formal GRAMA request was made, then the administrative remedies associated with that were not fully exhausted."

¶7   Gordon appealed the district court's decision, and we elected to retain the appeal. After oral argument, we requested supplemental briefing addressing, among other things, whether Gordon has standing to seek injunctive relief based on what he perceives as Herriman's "blanket policy" without tying his challenge to a specific records request.

## ISSUE AND STANDARD OF REVIEW

¶8   The sole issue on appeal is whether the district court correctly dismissed Gordon's GRAMA claim. The review of a ruling on a motion to dismiss "presents a legal question that we review for correctness, affording no deference to the district court's decision." *McKitrick v. Gibson*, 2021 UT 48, ¶ 14, 496 P.3d 147 (cleaned up). "[T]he question of whether a specific individual has standing to assert a claim is primarily a question of law." *Id.*

## ANALYSIS

¶9   Gordon argues that Herriman cannot charge requesters for inspecting public records during business hours, even if the city must spend significant staff time to produce the responsive

---

[1]   GRAMA has been amended since Gordon filed his district court petition in December 2022. Unless otherwise stated, we cite the December 2022 version of GRAMA because that version of the law was in effect when Gordon filed his petition.

records. In support, Gordon points to a section of GRAMA that grants a person "the right to inspect a public record free of charge, and the right to take a copy of a public record during normal working hours, subject to Sections 63G-2-203 and 63G-2-204." (Quoting UTAH CODE § 63G-2-201(1)(a).) Although sections 203 and 204 set forth allowable fees and processing times, Gordon argues that the phrase "subject to Sections 63G-2-203 and 63G-2-204" modifies only "the right to take a copy of a public record" and does not apply to "the right to inspect a public record free of charge." In other words, Gordon argues that the regulations around fees and processing times apply only to situations in which someone seeks to take a copy of a record, not to situations in which someone seeks to inspect a record.

¶10 We cannot address this argument, however, unless Gordon has standing to invoke the court's jurisdiction. We note that, in its initial brief, Herriman assumed that Gordon was appealing a records request decision. Based on that understanding, Herriman principally argued that Gordon had failed to exhaust his administrative remedies before bringing suit. In his reply brief, Gordon clarified that his challenge does not arise from a records request and argued that this posture relieved him of the exhaustion requirement.

¶11 The position Gordon took in his reply brief raised questions about his standing to pursue the present challenge. We have said that "standing is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." *Laws v. Grayeyes*, 2021 UT 59, ¶ 27, 498 P.3d 410 (cleaned up). "The requirement of standing is jurisdictional in the sense that it defines the limits of the judicial power in our tripartite system of government." *In re Adoption of B.B.*, 2020 UT 52, ¶ 29, 469 P.3d 1083 (cleaned up). "It should thus be raised *sua sponte* by the court in the face of any doubt on the matter." *Id.* (cleaned up). In accordance with these principles, we "explored some doubts about . . . standing at oral argument and subsequently asked the parties to submit supplemental briefing addressing this issue." *See id.* Having now reviewed the parties' supplemental arguments, we conclude that Gordon lacks statutory standing to pursue this challenge.

¶12 "To have standing to assert a claim a plaintiff must clear two hurdles. The first hurdle emanates from the law that establishes the plaintiff's right of action—the common law, a statute, or the constitution." *Haik v. Jones*, 2018 UT 39, ¶ 39, 427 P.3d 1155 (Lee, A.C.J., concurring in part and concurring in the

judgment). The second hurdle is the traditional standing test, which "requires proof that the plaintiff suffered a distinct and palpable injury that gives rise to a personal stake in the outcome of the dispute." *Id.* ¶ 40 (cleaned up).

¶13 Gordon fails to clear the first hurdle. Although he references the constitutional underpinnings of GRAMA, he has not directly asserted a constitutional or common law right to inspect records free of charge. Instead, he argues that GRAMA itself prohibits governmental entities from charging a fee for inspection. When the legislature creates statutory requirements, such as those in GRAMA, "it is entitled to designate, as it sees fit, how those requirements are to be enforced." *Bleazard v. City of Erda*, 2024 UT 17, ¶ 42, __P.3d__ (cleaned up). Therefore, "we first ask whether [Gordon] meets the requirements for standing under GRAMA—in other words, whether he is one of the persons the statute allows to seek judicial review" of the action challenged on appeal. *McKitrick v. Gibson*, 2021 UT 48, ¶ 18, 496 P.3d 147. Whether a plaintiff belongs to a class of persons that the legislature authorized to file suit is often referred to as "statutory standing." *Bleazard*, 2024 UT 17, ¶ 43 (cleaned up). If Gordon lacks statutory standing, "the presence of traditional or alternative standing will not cure" that deficiency. *McKitrick*, 2021 UT 48, ¶ 2.

¶14 Under the statutory standing framework, "we must determine to what class of plaintiffs [GRAMA] grants a right to sue and whether [Gordon] is within that class." *See Rupp v. Moffo*, 2015 UT 71, ¶ 9, 358 P.3d 1060. When we interpret statutes, "our primary objective is to ascertain the intent of the legislature." *McKitrick*, 2021 UT 48, ¶ 19 (cleaned up). "The best evidence of the legislature's intent is the plain language of the statute itself," but "we do not interpret statutory text in isolation." *Id.* (cleaned up). We "determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)." *Id.* (cleaned up).

¶15 GRAMA authorizes only certain persons to seek judicial review of particular decisions about records. Section 404, titled "Judicial review," states that a party may file a petition "for judicial review of an order or decision, as allowed under this part or in Subsection 63G-2-701(6)(a)(ii)." UTAH CODE § 63G-2-404(1)(a). Part 4 and subsection -701(6)(a)(ii) allow for judicial review when

- a requester or interested party appeals "an access denial," *see id.* § 63G-2-401(1)(a);

- an aggrieved person appeals a governmental entity's classification or designation of a record, *see id.* § 63G-2-401(8); and

- a political subdivision or requester files a petition from an appeals board decision, *see id.* § 63G-2 -701(6)(a)(ii).

¶16 Gordon falls within none of these categories. The first category does not apply because Gordon is emphatic that he did not bring this lawsuit "seeking access to a particular record but only to challenge the city's policy." The second category likewise does not apply because Gordon does not challenge a record classification or designation. And the third category does not apply because Gordon is not a requester who seeks review of an appeals board decision.

¶17 Instead of arguing that he falls within one of the categories listed above, Gordon claims that he has statutory standing by virtue of the injunction provision found in Utah Code section 63G-2-802(1). That section states, "[a] district court in this state may enjoin any governmental entity or political subdivision that violates or proposes to violate the provisions of this chapter." *Id.* § 63G-2-802. We conclude, however, that the injunction provision merely provides a remedy; it does not supply a right of action.

¶18 Whether section 802 creates a right of action "is a question of statutory interpretation." *See Buckner v. Kennard*, 2004 UT 78, ¶ 41, 99 P.3d 842. We "look first to the plain language of the statute for an express indication that a private right of action was intended." *Machan v. UNUM Life Ins. Co. of Am.*, 2005 UT 37, ¶ 24, 116 P.3d 342. Such an indication is made clear by "explicit language" and does not "require anyone to add language or make inferences to impart the full meaning of the statute." *Miller v. Weaver*, 2003 UT 12, ¶ 21, 66 P.3d 592.

¶19 "In the absence of language expressly granting a private right of action in the statute itself, the courts of this state are reluctant to imply a private right of action based on state law." *Id.* ¶ 20. In fact, "Utah courts have rarely, if ever, found a Utah statute to grant an implied private right of action." *Buckner*, 2004 UT 78, ¶ 43. "Our reluctance is amplified when, for example, discerning a right of action would require[] us to infer language and meaning that does not appear on the face of the statute or when doing so would be inconsistent with the Legislature's statutory scheme." *Bleazard*, 2024 UT 17, ¶ 47 (cleaned up).

¶20 Here, the section on which Gordon relies, section 802, contains no express indication that a private right of action was intended. Where the legislature has granted the right to judicial review in GRAMA, it has done so unambiguously. The sections listed above, sections 63G-2-401(1)(a), -401(8), and -701(6)(a)(ii), each identify a specific type of records decision and the class of persons who may appeal that decision. Section 404, titled "Judicial review," then sets forth the procedure for seeking "judicial review of an order or decision" as allowed under part 4 of GRAMA or subsection -701(6)(a)(ii). UTAH CODE § 63G-2-404(1)(a).

¶21 In contrast, section 802 is found in part 8 of GRAMA, titled "Remedies." Unlike the provisions listed in section 404, section 802 does not authorize a class of persons to seek judicial review of certain records decisions. Instead, it authorizes the district court to grant injunctive relief and award attorney fees to the requester in certain situations. In other words, the section does not create a private right of action but merely affords a particular remedy if a party that already has a private right of action prevails.

¶22 In that way, section 802 functions much like the Declaratory Judgment Act, which gives district courts "the power to issue declaratory judgments." *Id.* § 78B-6-401(1). We have held that the Declaratory Judgment Act "merely authorizes a new form of relief" and "does not create a cause of action or grant jurisdiction . . . where it would not otherwise exist." *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983). Accordingly, a plaintiff seeking a declaratory judgment that a statute has been violated must have a separate right of action. *Summit County v. Town of Hideout*, 2024 UT 16, ¶¶ 32–35; *Bleazard*, 2024 UT 17, ¶ 44. Just as a plaintiff cannot seek a declaratory judgment without an independent right of action, Gordon cannot seek an injunction under section 802 because he is not within the class of persons authorized by the legislature to seek judicial review of alleged GRAMA violations.

¶23 Because section 802 does not expressly create a private right of action, we must consider whether this is a rare instance where one should be inferred. Gordon contends that the legislature must have intended to create a private right of action in section 802 because that section allows the district court to "enjoin any governmental entity or political subdivision that violates *or proposes to violate* the provisions of this chapter." UTAH CODE § 63G-2-802(1) (emphasis added). He reasons that the "only way a person could ask a district court to enjoin a proposed violation of GRAMA is if

persons had the right to file a lawsuit seeking the injunctive relief the Utah Legislature has provided."

¶24 We disagree with Gordon's reasoning. As an initial matter, we can envision circumstances in which a proposed violation of GRAMA would fall within an express right of judicial review. For instance, an aggrieved person authorized to seek judicial review of a classification decision might request injunctive relief that would prospectively prevent or require the release of the subject record. But in any event, "[w]e will not infer that the legislature intended to create a new statutory right of action in such an oblique way." *Bleazard*, 2024 UT 17, ¶ 55. This sentiment is particularly true where the legislature has expressly granted the right to judicial review in other provisions of GRAMA. And although GRAMA specifically allows political subdivisions to adopt ordinances and policies to govern records requests, *see* UTAH CODE § 63G-2-701, the legislature did not see fit to authorize judicial review of those general policies. We cannot read into GRAMA something that is not there.

¶25 Without an express or implied statutory right to seek judicial review of Herriman's alleged policy, Gordon lacks statutory standing to pursue this action.

## CONCLUSION

¶26 We affirm the district court's dismissal of Gordon's claim. To invoke the court's jurisdiction, a statutory claimant must be within the class of persons authorized by the legislature to file suit to enforce the statute. Because Gordon lacks statutory standing, the district court lacked jurisdiction to adjudicate his GRAMA claim and properly dismissed it.